[Civil No. 4084. Filed November 6, 1939.]

[95 Pac. (2d) 415.]

J. J. TAYLOR, W. ROY WAYLAND and JOHN J. DURKIN, as Members of and Constituting the Unemployment Compensation Commission of Arizona, E. W. MONTGOMERY, E. G. GRACEY and CLAUDE THOMAS, as Members of and Constituting the Advisory Committee on Personnel of the Unemployment Compensation Commission of Arizona, and SAMUEL T. ADAMS, as the Acting Supervisor of Merit Examinations of the Unemployment Compensation Commission of Arizona, Appellants, v. C. M. McSWAIN, H. K. McCOY, FLORA McCORMICK, MARK C. HOWE, CATHERINE EUBANKS, SAMUEL A. THROP, HARRY JENNINGS, ISABEL NOYES, BEULAH STEELE, SUSANNE HOLDEN, FRANCES LARISON, MARY BARRETT, EDITH DAIRSON, JANE LANE, VERA A. ZAPIEN, JOSEPHINE HIGDON, E. M. JOSLIN, ALENE MELIUS and J. B. SHAUGHNESSY, Appellees.

Mr. George D. Locke, for Appellants.

Mr. J. Bolivar Sumter and Mr. Lee Garrett, for Appellees.

LOCKWOOD, J.—This is a class action by certain named plaintiffs, under section 3736, Revised Code of 1928, to secure a declaratory judgment as to the meaning and construction of a certain portion of subdivision (d), section 11, chapter 13, of the Session Laws of the First Special Session of the Twelfth Legislature, commonly known as the "Unemployment Compensation Law", and of certain regulations established by the Arizona Unemployment Compensation Commission

under said subdivision (d), *supra*. The complaint also asks for certain affirmative relief.

The defendants in the case were the members of the Unemployment Compensation Commission, hereinafter called the commission; the members of the advisory committee on personnel of the commission, hereinafter called the committee; and the acting supervisor of merit examinations, hereinafter called the supervisor. The defendants demurred to the complaint specially on the grounds (a) that all persons who would be affected by the judgment had not been made parties plaintiff, and (b) that a declaratory judgment would not terminate the uncertainty nor controversy set up in the complaint; and also demurred generally on the ground that the matters alleged in the complaint did not constitute a cause of action against the defendants. The court overruled the general and special demurrers, and defendants electing to stand upon the demurrers, a declaratory judgment was rendered, interpreting and construing subdivision (d), *supra,* and the rules and regulations of the commission established thereunder, and granting certain affirmative relief to plaintiffs and all other persons of their class, whereupon this appeal was taken.

The facts necessary for an understanding of the legal issues raised may be stated as follows: The twelfth legislature, in its first special session, adopted chapter 13, providing for the payment of benefits to unemployed persons. The act is lengthy and sets up many provisions in regard to the collection of contributions from employers and employees, and their payment to unemployed persons. A commission of three members was created by the act to administer it. This commission was given certain powers in regard to administration, some of which were set forth in subdivision (d), *supra,* as follows:

"Personnel. Subject to other provisions of this Act, the commission is authorized to appoint, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. All positions shall be filled by persons selected and appointed on a non-partisan merit basis. The commission may delegate to any such person so appointed such power and authority as it deems reasonable and proper for the effective administration of this Act, and may in its discretion bond any person handling moneys or signing checks hereunder."

Temporary appointments were made by the commission to fill various positions under it, and with reasonable promptness it established rules and regulations to provide for a permanent filling of these positions on a non-partisan merit basis. These rules and regulations were quite voluminous, and we quote only the portions which are material to the determination of this case.

"Rule II. Statement of Policy. . . . all appointments shall be made on a non-partisan merit basis, except for emergency and provisional appointments, and positions shall be filled from registers of eligibles established by merit examinations. Examinations shall be conducted according to the provisions of these regulations and shall apply to all positions in the classified service.

"Rule III, section 1. Advisory Committee on Personnel. In order to assure that the merit principle in government as set forth in these regulations shall be applied impartially, with freedom from political influence and with justice to all citizens of the State of Arizona, the Commission shall appoint an Advisory Committee on Personnel.

"The Committee shall be composed of three members, who shall be public spirited persons with recognized standing in the community and a reputation for impartiality. They shall be known to be interested in the improvement of public administration and in the selection of efficient government personnel.

"It shall be the duty of the Advisory Committee on Personnel

"(1) To appoint a Supervisor of Examinations, to advise with him in formulating procedures for the conduct of merit examinations, and to inspect and review his activities with the purpose of assuring conformity with the policies contained in these regulations.

"Sec. 2. Supervisor of Merit Examinations. The Supervisor of Examinations shall be a person of recognized standing in the field of personnel or public administration, have known sympathies with the merit principle in government service and shall possess such other qualifications as are requisite to performance of the duties of the supervisor hereinafter defined. The Supervisor shall not have served at any time as an employee of the Commission and shall not hold office in any political party.

"In conformance with these regulations, the Supervisor of Examinations shall develop and put into continuous effect policies and procedures for the administration of the merit system. This shall include the preparation, administration and scoring of examinations and the preparation, custody and maintenance of registers of eligibles, and the certifications of eligibles from the registers."

"Rule VI, section 1. Notices of Examinations. The Supervisor of Examinations shall give public announcement of all examinations for entrance into the classified service at least three weeks in advance of the closing date for receipt of applications. Such notice shall be posted in important centers throughout the State and copies shall be distributed among public officials, newspapers, education institutions, professional and vocational societies, and other individuals and orgaizations. Public announcement of examinations shall specify the title and salary range of the position, the fact that entrance appointments shall be made at the minimum salary rate, the duties to be performed, the minimum qualifications required, the final date on which applications will be received, the relative weights to be given to the different parts of the examination, the passing rating, the nature of the examination, and all other pertinent information and

requirements consistent with the provisions of these regulations.''

''Sec. 6. Character of Examinations. Examinations shall be practical in nature and shall relate to the duties of the positions. Examinations shall consist of written tests, performance tests, oral tests, ratings on education and experience, ratings on those submitted, or any combination thereof, as the Supervisor of Examinations with the approval of the Committee may prescribe.''

''Sec. 8. Rating Examinations. In all examinations, the minimum rating or standing through which eligibility on a register may be earned shall be seventy per cent. Such final rating shall be based upon a weighted sum of the various factors of the total examination, including education, experience, Veteran's preference, and other qualifying elements as shown in the application of the candidate or other verified information. Failure in any part of an examination shall disqualify the applicant in the entire examination, and furthermore, shall disqualify him from participation in subsequent parts of the examination. All applicants for the same position shall be accorded uniform and equal treatment in all phases of examination procedure. Any examiner or member of an oral examination board shall disclose each instance in which he has known the applicant personally and shall refrain from rating such applicant.

''Sec. 9. Oral Examinations. When an oral examination forms a part of a total examination for a given position, the Committee shall appoint one or more oral examination boards as needed, to consist of three members who shall be known to be interested in the improvement of public administration and in the selection of efficient government personnel, and one of whom shall be technically familiar with the character of work, in the position for which the applicants will be examined. No member of the Commission nor any of its employees nor any person who is an officer or committee member of or actively engaged in work of a political party organization shall serve as a member of such a board. All candidates for the same position who qualify for the oral examination shall be rated by the same oral examination board.''

"Rule VII. Sec. 1. Establishment of Registers. After each examination the Supervisor of Examinations shall prepare a register of persons whose total or average rating in the examinations is not less than seventy per cent. The names shall be placed on the register in order of such total rating starting with the highest. . . .

"Sec. 6. Certification of Eligibles. Upon receipt of a requisition for any one position it shall be the duty of the Supervisor of Examinations to submit in writing the three highest names on the most appropriate register. When there is more than one vacancy in the same class of position, the number of names certified from the same register shall be five times the number of positions to be filled divided by three. (Fractions shall be considered as the next whole number.) . . ."

"Rule VIII. Sec. 2. Employees Appointed Prior to Date of Adoption of These Regulations. All persons in the classified service who have been on the pay roll sixty days preceding the date of the adoption of these Regulations, who have given satisfactory service and who have demonstrated that they are properly qualified, may be retained by the Executive Director, with the approval of the Commission, in their present positions, provided that they attain a passing mark of seventy per cent in the open competitive examinations for their positions conducted in accordance with the provisions of Rule VI."

In pursuance of section 1 of rule 3, *supra,* the commission appointed the defendants who are members of the advisory committee, and they in turn, pursuant to the same rule, named a supervisor of examinations. Under these regulations the supervisor gave public notice that an open, competitive merit examination for certain positions in the classified service of the commission would be held. This notice provided, among other things, that written examinations would be given all applicants, and that they would also be rated on experience and personal qualifications, and in some classifications on oral and performance examinations.

The manner of weighting these different types of examinations was also set forth in the notice, and it was stated:

"Present employees holding positions since Jan. 3, 1938 will qualify by making a passing grade."

Subsequently the plaintiffs who were then on the pay roll of the commission, and all other employees of like status, together with many other unemployed persons, made application to take the examinations for one or another of the positions set forth in the notice. They all qualified for the privilege of taking the examination, and took writen tests for the particular position which each desired, as set forth in said notice. After the close of these written tests, it is alleged that the following occurred:

"That at the close of the written tests provided for in the aforesaid information circular, and after the examinees' papers containing the answers to the questions propounded on said tests had been turned in to the Supervisor of Examinations for correcting and scoring, he, the said Supervisor of Examinations, did announce that owing to the fact that such a large number of persons had qualified to take the examination that he had, after consulting with the Advisory Committee and the Commission, decided that for those positions set forth in the aforesaid information circular where there was only one employee required, that only the five persons who had written the highest score on said written test would be allowed to take the balance of the tests, to-wit: the education and experience test, the oral test or the performance test, as the case might be; and for those positions, set forth in said information circular where more than one employee was required, that only so many persons, who had taken said written test would be allowed to take the balance of the examination, to-wit: the education and experience test, the oral test or the performance test, as the case might be, as was represented by the total number of employees required to fill the several positions, multiplied by five and divided by three and that only those who

had made the highest scores on said written test would be selected and qualified to take the balance of the examination, and that all other persons who had taken said written test would be disqualified and excluded from further participation in the examinations, regardless of whether they had or had not made such a score on said written tests as would, when added to the possible attainable score on all other parts of the examination, give them a minimum total average score of 70% on the whole examination.''

Plaintiffs claim said announcement was unreasonable, unlawful and contrary to the regulations set up by the commission for examinations under the merit system, and by reason thereof each and all of the plaintiffs, together with many other persons, were excluded from any further part in the examinations, and were refused the right to take the balance of the tests provided for by the respective positions for which they were applicants; that as a result of this, those who were already employed were dismissed from the service of the commission for no other cause than that they had failed to pass the examination required by the regulations of the commission and the foregoing notice. The prayer of the complaint is for an interpretation of the statute and the regulations, and a declaration as to whether the ruling of the supervisor in regard to the examinations above referred to violates the statute and such regulations, and for certain specific relief.

It will be seen that the questions raised are of considerable importance, not only as an interpretation of the duties of the unemployment commission, but as bearing on the rights and duties of all other boards, commissions and departments of the state which are required to fill the positions therein by a non-partisan merit system.

The first question is whether there is a defect of parties plaintiff. Section 3736, *supra,* reads in part as follows:

" . . . When the question to be determined is one of a common or general interest of many persons, or when the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

We think it is apparent from the foregoing statement that the parties who are interested in the question of whether the examinations above referred to were conducted in accordance with law are extremely numerous, and that it would have been impracticable, if not impossible, to make all of them parties plaintiff. The issues in question, if they may be determined at all in a proceeding of this kind, can be settled as well with the present parties plaintiff as if all those who took the written examinations above referred to and were not permitted to continue with the oral and experience tests, were before the court. We think there is no defect of parties plaintiff.

██ The second question is of greater difficulty. It is whether our declaratory judgment statute applies to a situation like the present one. It reads so far as material as follows:

"§ 4386. Person interested or affected may have declaration. Any person interested under a deed, will, written contract or other writing, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof."

"§ 4387. Person beneficially interested may have declaration; enumeration not a limitation. . . .

"The enumeration in this and the preceding sections does not limit or restrict the exercise of the general powers conferred, in any action where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty."

"§ 4388. When decree may be refused. The court may refuse to render a declaratory judgment, where such judgment would not terminate the uncertainty or controversy." Revised Code of 1928.

It will be seen that any person whose rights, status or other legal relation was affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction arising thereunder and obtain a declaration of his rights and status. We have held in the case of *Morton* v. *Pacific Construction Co.,* 36 Ariz. 97, 283 Pac. 281, that the statute is constitutional, and, in substance, that the only things essential to give the court jurisdiction are that the question must be real, and not theoretical; the party raising it must have a real interest; and there must be someone having a real interest in the question who may oppose the declaration sought. We think these circumstances all appear in the present case. The correct interpretation of the civil service rules of the unemployment compensation commission was a very vital issue to the plaintiffs herein, and they had a vital interest in obtaining a construction thereof. The commission and its committee and supervisor also had an interest in maintaining the construction which they had placed upon it, and which was contrary to that urged by the plaintiffs. The effect of the declaratory judgment will be to settle and afford relief from uncertainty and insecurity with respect to these rights, status and other legal relations, and it is generally held that the statute is to be liberally construed. *Miller* v. *Miller,* 149 Tenn. 463, 261 S. W. 965; sec. 4387, *supra.*

It is urged that any judgment which we could render would not terminate the uncertainty nor controversy giving rise to the proceeding. It is true that the ultimate result desired by the plaintiffs, to-wit: their reinstatement to the positions from which they

have been discharged could not be determined by any judgment which we could render at the present time, but their right to proceed further with the examination, which was one of the prerequisites to their retaining their positions, could and would be settled thereby. We think this is sufficient to take the case out of the provisions of section 4388, *supra,* which, after all, are permissive and not mandatory upon the court. We, therefore, consider the case upon its merits.

■ The entire system used by the commission in selecting its employees is based upon one sentence of subdiv. (d), *supra.* This sentence reads: ''Positions shall be filled by persons selected and appointed on a non-partisan merit basis.'' This is an explicit direction to the commission to use such a system in making its appointments, but it in no way sets up the details of the system. That is necessarily left to the reasonable discretion of the commission, the only limitation being that the system established shall be non-partisan and based solely on the merits of the appointees.

■ Merit systems in American government are of comparatively recent development. The federal government began about 1886 in a tentative way to make certain appointments based at least upon an effort to ascertain the ability of the appointee to perform properly the services of his position, rather than his contributions to the success of the party which happened to be in power, and this system has spread to a greater or less extent in all parts of the country, although it is by no means universal. The phrase ''non-partisan merit basis'' has, therefore, acquired a distinct and well known meaning. Its essentials are, in substance, that the appointment of all employees who come under the system should be made on the basis, and as the result, of open and competitive examinations arranged

to determine which of the applicants for the position is best fitted to perform its duties, regardless of political affiliations or past record, and that once an appointment is made, removal from the position should be based only on unfitness for the work for one reason or another, and not upon personal considerations. It necessarily follows that any system which conforms to these principles, no matter what its details may be, is a non-partisan merit system, and one which does not so conform, is not a system coming within the definition. It is obvious that the most important part of such a system is the nature of the examinations given. If they are wisely planned and fairly given, there is no better method known of ascertaining in advance the qualifications of the applicant.

■ The statute does not in any manner designate the character, extent and method of the examinations to be given. It was, therefore, absolutely necessary that someone have this authority, and under the circumstances this power could vest only in the commission. This fact was recognized, and it did establish an elaborate set of rules and regulations under which examinations should be held and appointments made. Those essential to the determination of this case have been already quoted in full. It appears therefrom that a committee was to be appointed, consisting of three members whose only qualifications were that they should be public-spirited persons, interested in the improvement of public administration, and with recognized standing in the community, and a reputation for impartiality. There is no suggestion anywhere in the record that the three members of this committee did not come within the qualifications. This committee was given the authority to appoint a supervisor of examinations to work under its direction for the purpose of carrying into effect the policies set forth in the regulations adopted by the commission. The qualifications

required of him were that he should be in sympathy with the merit system in government service, and should have a recognized standing in the field of personnel and public administration. The complaint alleges that he did not have these qualifications, and, for the purpose of the demurrers, we must assume that this allegation is correct.

Notice was given that an examination would be held for the purpose of filing various positions which were within the appointment of the commission, and a set of tests was prepared under the direction of the supervisor. The notice followed strictly the regulations in regard to what it should contain, as set forth in section 1 of rule VI, *supra,* and plaintiffs, together with many others, appeared at the time and places set up in the notice for the purpose of taking the examinations. These examinations were to consist of written tests, performance tests, oral tests, and ratings on education and experience. There is no contention that the tests in and of themselves were not proper under the regulations. The written test was given first, and after it had been concluded and the papers turned in for examination and scoring, the supervisor announced that because a number of persons much in excess of the positions to be filled had applied for permission to take the examinations that he, after consulting with the advisory committee and the commission, had decided that where but one position was to be filled only the five who made the highest rating on the written test would be permitted to take the balance of the tests, and where more than one position was to be filled only those persons as were equal to the total number of positions to be filled multiplied by five and divided by three and who had made the highest ratings on the written test, would be permitted to take the other tests, and that all other persons would be disqualified and excluded from further participation in the examina-

tion, no matter what their rating was. The plaintiffs failed to come within the category of those making the highest score, as limited by the supervisor in this manner, and were not permitted to take the other tests, but were disqualified from further participation in the examination, and necessarily from having their names placed on the eligibility list, or being appointed to any of the positions covered by the examination. Most, if not all, of these plaintiffs were already holding temporary positions under the commission, and as a result of the action of the supervisor were removed from the service.

 It is the general rule that civil service regulations adopted by any commission, under the authority of a statute, have the same force and effect, so far as their scope is concerned, as law, and that all persons affected thereby, including the commission and its officers and employees, are bound to follow them so far as they are applicable. *City of Phoenix* v. *Sittenfeld,* 53 Ariz. 240, 88 Pac. (2d) 83; *Welch* v. *State Board,* 53 Ariz. 167, 87 Pac. (2d) 109; 5 R. C. L. 611, and cases cited. It follows that while the commission in the present case and under our statute had the power to change the regulations adopted by it in any manner so long as it did not conflict with the principles of a nonpartisan merit system, until such change was made it and all of its officers were bound by the existing rules and regulations, and any act done by them in violation thereof was void, just as the legislature has the power to change a law which it has adopted, but until such change is made in a constitutional manner it is as much bound by the existing law as is the individual citizen. Further, any action taken by the commission or its officers must be in conformity with the regulations as they exist at the time of the action, and not as they may afterwards be amended. *Welch* v. *State*

*Board, supra.* Retroactive regulations are just as obnoxious as retroactive laws, and while it is true there are no express constitutional nor statutory inhibitions on regulations of that nature, we think the whole spirit of our government is opposed thereto, and unless the legislative authority expressly declares regulations may be retroactive, it is beyond the power of a commission or subordinate body to give them that effect. We consider, therefore, whether the action of the supervisor was authorized by the regulations as they existed at the time plaintiffs took the written test above referred to.

 Upon a careful examination of these regulations, we find the following statement:

"In all examinations the minimum rating or standing through which eligibility on a register may be earned shall be seventy per cent."

This is a positive and explicit statement of the method of minimum rating. Any applicant who fails to receive this rating or standing is necessarily barred from the eligibility list. The rule also provides that:

"Failure in any part of an examination shall disqualify the applicant in the entire examination, and furthermore, shall disqualify him for participation in subsequent parts of the examination."

We think that, construed together, these rules require not only that an applicant shall receive an average grade of 70 per cent. in all examinations, but that if he falls below 70 per cent. in any independent part of the examination he may not participate in other parts. In other words, the minimum passing grade of 70 per cent. applies both to the average result of all the examination and to the result of each particular part thereof, if it is divided into parts. Section 6 of rule VI, *supra,* contemplates the division of an examination into from one to four parts, these parts being

(a) written tests, (b) performance tests, (c) oral tests, and (d) ratings on education and experience. It is not necessary that examinations for all positions be divided into all of these parts, but if a division is made into more than one part, then the applicant must make a grade of at least 70 per cent. in each part of the examination.

The question then is whether the plaintiffs fell below the grade of seventy per cent. required in the regulation as a minimum for passing the written test which they took. This depends upon the meaning of the words "seventy per cent." The commonly accepted meaning of this phrase is well recognized. When applied to an examination it means, if the phrase is unqualified, that the examinee answered correctly seven out of every ten questions. It is plain that if this definition is applied the number passing the minimum grade in an examination would vary in accordance with the difficulty of the examination and the ability of the examinees. In some cases, the questions might be so simple and the examinees so skilled that all would pass far above the minimum. On the other hand, there is hardly a subject upon which an examination could not be prepared that would disqualify every person taking the test. Nevertheless, under the ordinarily accepted definition of "seventy per cent.," in the one case every applicant could proceed with the next examination, while in the other none could. The effect given to the phrase by the supervisor is very different from the one generally accepted. In fact, it differs so greatly that it is doubtful if it would ever occur to any person, except a civil service examiner, that such a meaning could exist. Substantially the definition given by the supervisor amounted to this:

"I will decide arbitrarily how many persons should be placed upon the eligibility list, using such formula as I think proper for determining that number. I will then take the highest rated applicants up to that number on each part of the test, and assume that the number of questions successfully answered by the highest of these applicants represents a rating of 100%, and the number so answered by the lowest of them represents a rating of 70%, and that all who answered a less number correctly have fallen below the 70% test."

It is doubtless true that if the commission wished to use such a system of grading, and so stated previously in their regulations, they would have a right to adopt it, for after all it does insure that the eligible list shall be filled from those who make the best showing at the examination, in the order of the ability shown, but to say that such a procedure conforms with the regulation which fixes a minimum grade of 70 per cent. and states that only those who fall below that grade shall not be certified to the eligibility list is not justified by the ordinary meaning of the phrase.

In construing statutes and regulations, words and phrases are to be given their ordinary meaning unless there is something in the nature of the phrase or in the language of the statute or regulation which shows that it is to be given a different meaning, and then it must appear what that different meaning is. *Arizona Eastern R. Co.* v. *Matthews,* 20 Ariz. 282, 180 Pac. 159, 7 A. L. R. 1149; *Steinfeld & Co.* v. *Allison Mining Co.,* 41 Ariz. 340, 18 Pac. (2d) 267. In the present case, no one reading the regulation would have any reason to believe that the phrase "seventy per cent." was intended to have a meaning such as was given it practically by the supervisor.

We hold, therefore, that under the regulations as they existed at the time of the examination, if

plaintiffs made a grade of seventy per cent. within the common definition of the word, that is, answered correctly seven out of every ten questions given them, they were entitled as a matter of right to take the other examinations provided by the notice, and to be placed upon the eligibility list if each examination showed a minimum grade of seventy per cent. calculated on the basis as we have indicated. The judgment of the superior court, however, must be modified for the reason that it took the position that it was only necessary to make an average passing grade of seventy per cent. upon all of the tests in order for the examinee to be certified to the eligibility list, while we are of the opinion that the reasonable construction of the regulation was that a grade of seventy per cent. must be made on each test.

Subdivisions 5 and 6 of the judgment rendered by the trial court are modified to read as follows:

"5. That the plaintiffs and all other persons who qualified to take the examinations given by defendants on June 10 and/or 11, 1938, and who took the written tests, and answered correctly at least seven of each ten questions therein, and were not allowed to take the balance of the tests prescribed for the several positions, are entitled to have said examinations reopened for the purpose of allowing such persons to take proper tests of the nature of the balance of those given on June 10 and/or 11, 1938.

"6. That the plaintiffs, and all other persons who took the written tests, with a minimum rating of 70% as described above, on June 10 and/or 11, 1938, and who did not take the balance of the tests, and who may secure a rating of at least 70% on each part of the other tests given as above provided, are entitled to have their names entered upon the register of eligibles for appointment in the classified service of said commission as is provided by section 1 of Rule VII, and to be certified for positions in said classified service of said commission, as is provided by section 6 of

Rule VII, Regulations for Merit System and Personnel Administration.''

and as so modified, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.