339 P.2d 1038

ANTHONY A. BIANCO, INC., Jarson and Zerilli Co., Inc., and Peter Nalbandian, dba Arizona Vineyards, John Curci and L. A. Turner, dba Curci-Turner, Yuma Lemon Groves, a corporation, Ralph Hawkins, as Agricultural Prorate Commissioner of the State of Arizona, and J. M. Foote, as Supervisor of Inspection of the State of Arizona, Appellants,

v.

R. M. HESS, Arthur Burgher, E. D. Tway, D. M. Tyler, Lyle Patrick, Lawrence Mehren and Walter White, Appellees.

No. 6366.

Supreme Court of Arizona.

May 20, 1959.

Robert Morrison, Atty. Gen., and Harmon S. Puckett, Asst. Atty. Gen., for Ralph Hawkins and J. M. Foote, appellants.

McKesson & Renaud and J. Gordon Cook, Phoenix, for intervenor-appellants.

Snell & Wilmer and Perry M. Ling, Phoenix, for appellees.

PHELPS, Chief Justice.

This action was instituted in the Superior Court of Maricopa County by plaintiffs, R. M. Hess, Arthur Burgher, E. D. Tway, D. M. Tyler, Lyle Patrick, Lawrence Mehren and Walter White, against the Agricultural Prorate Commission of the State of Arizona, and the Supervisor of Inspection of the State of Arizona, seeking a declaratory judgment interpreting certain parts of the Agricultural Prorate Act of 1939 as amended (A.R.S. § 3–401 et seq.), to wit, the phrases "commercial production" and "the unit of one acre in commercial production". In addition, plaintiffs' complaint prayed that a writ of mandamus be issued requiring the Agricultural Prorate Commissioner to correct certain lists of lemon growers by eliminating therefrom certain lemon growers not in commercial production.

An alternative writ of mandamus issued requiring the Commissioner and Supervisor of Inspection to either correct the lists of growers or show cause why such correction should not be made. The Attorney General answered for the Commissioner and Supervisor, admitting the existence of a controversy and alleging that the interpretation of the Agricultural Prorate Act by the Commissioner was a correct interpretation, and that therefore the writ of mandamus should not be made peremptory, and praying for a declaratory judgment interpreting the Agricultural Prorate Act in accordance with the views of the Commissioner and the Supervisor. The controversy as between these parties is based upon the proper construction to be given to the Agricultural Prorate Act.

Prior to the answer of the Attorney General, Anthony A. Bianco, Inc., Jarson & Zerilli Co., Inc., Peter Nalbandian, Iba Arizona Vineyards, John Curci and L. A. Turner, dba Curci-Turner, and Yuma Lemon Groves, a corporation, owners of immature lemon trees, moved to intervene as defendants to file a motion to dismiss the complaint. The motion to intervene was grant-

ed and the motion to dismiss was denied after extensive argument and filing of complete briefs.

Plaintiffs then moved for summary judgment based upon the pleadings and records of the cause, and the deposition of the defendant Supervisor of Inspection. The intervenor-defendants filed a motion to strike the motion for summary judgment raising the propriety of the summary judgment remedy at that stage of the proceedings. The trial court was of the opinion that the only substantial issue in the case was one of law, to wit, the proper interpretation of the phrase "commercial production" as contained in the Agricultural Prorate Act. The motion to strike was denied. The motion for summary judgment after being briefed and argued was submitted for decision.

The question involved then was whether the phrases "commercial production" and "the unit of one acre in commercial production" should be construed as meaning a grove actually then capable of producing fruit in commercial quantities or construed as meaning a grove planted and intended for commercial production in the future but not yet producing fruit in commercial quantities. As to this question the trial court said:

"The Court is of the opinion that the words 'Commercial production' are words of such common meaning that the taking of evidence as to their meaning would in nowise add in interpreting their meaning. It seems reasonably clear that an acre of lemons in commercial production means an acre of ground planted to lemon trees so planted and managed as to demonstrate the owner thereof intends or hopes to reap a monetary gain therefrom as distinguished from trees planted say for landscape effect or for personal and family use.

"This leaves only the question as to whether the grove must be matured to the point it can be considered a commercially producing grove or whether it may be still in a stage of growing and maturing where the fruit produced, if any, does not substantially meet the cost of care with a reasonable hope of some overplus.

"Undoubtedly the Commissioner, as to borderline cases, will be obliged to use his discretion and good judgment in determining whether a given grove meets the test or does not, and probably the Commissioner might presumptively in the absence of protest and appeal, reject as ineligible all groves under a given age, which age he would accept as the breaking point as between being in commercial production and being still in the growing or maturing stage. However, this exact question is not involved in this litigation.

"The Court is of the opinion from a reading of the Act that the Legislature plainly had in mind making possible the control of surpluses existing when the aid of the Prorate Act should be invoked. Clearly possible surpluses and market conditions two, three or four years in the future should not prevent the control of such conditions today, if such control is indicated after compliance with the Prorate Act procedures."

The trial court then held that the phrases "commercial production" and "the unit of one acre in commercial production" as used in the Agricultural Prorate Act and as applied to the marketing of lemons means an acre of ground planted to lemon trees which are so planted and cared for and which have grown to a stage of maturity that such grove is capable of producing in the current crop year a crop of lemons, under normal crop and market conditions and with normal husbandlike management, *sufficient to meet and defray the costs of production with a reasonable expectation of some income in excess thereof as a profit to the grower.* The trial court then made the alternative writ of mandamus peremptory and ordered the Agricultural Prorate Commissioner to correct the lists of producers submitted to him by the Supervisor of Inspection by eliminating the names of all owners of acreage planted to lemon trees, which were not of a sufficient age, maturity and producing capacity to qualify as being in commercial production under the above definition.

Both the defendants and the intervenor-defendants have appealed to this court from the aforementioned summary judgment order of the trial court. J. M. Foote, Superviser of Inspection and Ralph Hawkins, Agricultural Prorate Commissioner gave notice of appeal but assigned no errors, however, on March 20, 1957 by written document they adopted authorities and arguments of intervenors. We will however, consider them as having adopted intervenors' briefs in toto including assignments of error.

Defendants' first assignment of error is to the effect that: the superior court erred in refusing to grant defendants' motion to dismiss plaintiffs' complaint and in granting plaintiffs' motion for summary judgment for the reason that plaintiffs failed to make all persons parties who have or claim an interest which would be affected by the declaratory judgment sought, and plaintiffs have failed to make all persons parties who would be affected by the mandamus judgment sought, in that plaintiffs did not make all persons parties whom plaintiffs are seeking to remove from the list of producers and producing factors prepared by the Supervisor of Inspection pursuant to the provisions of Subsection A of A.R.S. § 3–409.

Defendants argue that there are great numbers of persons or organizations who own or control lemon acreage which has not grown to a stage of maturity that is capable of commercial production as defined by the trial court; that the interest of these persons or organizations will be affected by the summary judgment order; that these persons or organizations were not made parties as required by A.R.S. § 12–1841, which provides in part:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. * * *"

Borchard Declaratory Judgments, Second Edition at page 255, states:

"The Federal Declaratory Judgments Act [28 U.S.C.A. §§ 2201, 2202] makes no mention of parties, leaving this matter to the general rules of practice. The broad language of the Uniform Act, which was designed mainly as a guide to the courts, has now been supplemented by the Federal Rules of Civil Procedure, * * *."

The Federal Rules of Civil Procedure, 28 U.S.C.A. have been adopted in Arizona, 16 A.R.S., and as stated above supplement the Declaratory Judgments Act as to parties. Therefore, the precise question is whether or not the great numbers of persons, who own or control lemon acreage which has not grown to a state of maturity where it is in commercial production, are necessary parties. 26 C.J.S. Declaratory Judgments § 123, p. 283, states the general rule that:

"Rules with respect to joinder of necessary parties, who such parties are, and the effect of their omission, have been applied to actions for a declaratory judgment relating to validity, construction, and operation of statutes, ordinances, and regulations, the rulings and decisions of governmental agencies or officers, patents, wills, trusts, and estates, and other matters."

At page 285, 26 C.J.S. cites under the subheading "Persons held not necessary parties" the Arizona case of Taylor v. McSwain, 54 Ariz. 295, 95 P.2d 415. While it is true that the Taylor case is a class action, the same principle is involved here. In the instant case some *five* defendants intervened to advocate their interpretation of the statute. We believe that the issue presented in this case can be settled as well by them as if all those similarly situated had intervened. In addition, under the Declaratory Judgments Act, A.R.S. § 12–1841, the interest of those not made parties is not affected and their rights are not prejudiced. Therefore, we hold that those persons or organizations which did not intervene are not necessary parties to this action. The case of Morton v. Pacific Const. Co., 36

Ariz. 97, 283 P. 281, cited by defendants, deals with the necessary parties in a declaratory judgment action interpreting a contract. In that case the court pointed out that the proceeding was in the nature of an action in rem and if it was otherwise regular and legal, would culminate in the fixing of a lien upon the property of each individual owner in the assessment district without personal notice to him. This distinguishes that case from the one at hand.

█ In regard to the necessary parties in a mandamus action this court stated in *Aztec Land and Cattle Co. v. Navajo Realty Co.*, 79 Ariz. 55, 64, 283 P.2d 227, 233, in quoting from 35 Am.Jur., Mandamus, section 327 that:

"A mandamus proceeding is properly directed against the officer, body, corporation, or person whose duty it is to perform the act sought to be enforced. Technically, such party is the only necessary party respondent or defendant; therefore, those whose co-operation is not needed to secure the end sought need not be joined. * * *"

We believe this is sufficient to answer defendants' assertion that the persons to be removed from the list are necessary parties.

█ Defendants next contend that the remedies of declaratory judgment and mandamus are not appropriate because plaintiffs did not show a justiciable controversy or beneficial interest. In *Taylor v. McSwain*, supra [54 Ariz. 295, 95 P.2d 420], we said that, "* * * the only things essential to give the court jurisdiction are that the questions must be real, and not theoretical; the party raising it must have a real interest; and there must be someone having a real interest in the question who may oppose the declaration sought. * * *" Plaintiffs are seeking the establishment of a prorate program with respect to production and marketing of lemons; they are owners of acreage of mature lemon groves and under the Agricultural Prorate Act, Subsection B of A.R.S. § 3-410, in order to institute a prorate program it is essential that not less than two thirds of the producers voting in the proposed zone, and the owners of not less than fifty-one per cent of the producing factors vote in favor of the program. The correct interpretation of the Agricultural Prorate Act was a very vital issue to plaintiffs herein and they have a vital interest in obtaining a construction thereof. For these reasons we believe the remedies of declaratory judgment and mandamus were appropriate. See *Board of Regents of University and State Colleges v. Frohmiller*, 69 Ariz. 50, 208 P.2d 833, and *Taylor v. McSwain*, supra.

█ Defendants' third assignment of error deals with the *real* controversy here involved. It is that the definition of the

phrases "commercial production" and "the unit of one acre in commercial production" as set forth in the summary judgment order are contrary to law and the evidence for the reason that neither the provisions of the Arizona Agricultural Prorate Act of 1939, as amended, nor the limited evidence before the trial court justified such determination. First of all, we are in complete agreement with the trial court that the words "commercial production" are words of common meaning, and that the taking of evidence would have in no way aided in interpreting their meaning. We will therefore confine ourselves to the interpretation as justified by the Agricultural Prorate Act.

Paragraph 13 of A.R.S. § 3–401, defines production as follows:

"13. 'Production' means that portion of the *total* crop of a commodity of a producer which qualifies for marketing and sale to the consuming public * * *." (Emphasis supplied.)

From the definition of production as above set forth the conclusion is inescapable that the legislature intended "commercial production" to mean that the crop is presently in being, or is about to come into being, sufficient in quantity and quality for commercial disposition. In addition to the above definition of production, A.R.S. § 3–409 contemplates that the Commissioner may require lists of producers from *distributors or handlers of the*

*commodity* for which the proration program is proposed. Subsection B of A.R.S. § 3–412, provides, "Each producer shall be entitled to sign for the number of producing factors from which he is *then producing* the commodity named in the petition." Paragraph 2 of subsection A of A.R.S. § 3–421 requires that the finding of the Commissioner shall be made concerning "2. The economic stability of the agricultural industry concerned is being imperiled by prevailing market conditions". All of this leads to but one conclusion and that is that the interpretation given to the statute by the trial court was correct. The very nature of the Prorate Act is to prevent agricultural waste, which is defined as including economic waste and waste incident to the harvesting or preparation for delivery to market of commodities in excess of reasonable market demands. We believe that a forced construction of the statute would be necessary in order to adopt the interpretation advanced by the defendants. Accordingly, as above stated, we adopt the trial court's definition of "commercial production" and "the unit of one acre in commercial production" as set forth at the beginning of this opinion.

Defendants next assert that the legislature by the provisions of A.R.S. § 3–409 left the determination of who were producers, and what were producing factors, to the Supervisor of Inspection and the Agricultural Prorate Commissioner; that

the Supervisor's and Commissioner's determination included "Growing lemon trees with the view or intent of marketing the fruit"; that the action of the Commissioner in refusing to alter the Supervisor's list was not arbitrary or capricious; that the action of the Commissioner in refusing to alter his determination was not subject to collateral attack and plaintiffs are not entitled to the remedies of mandamus and declaratory judgment because particular provisions of the Agricultural Prorate Act, A.R.S. § 3–409 and § 3–422, provide that such action on behalf of the Commissioner is final.

On the other hand, plaintiffs take the position that under the statute the Commissioner is required to correct the list; that it is his responsibility to see that it complies with the statute; that if therefore "commercial production" means what plaintiffs contend it means, i. e., acreage which is of sufficient maturity to be in production, then it is the Commissioner's absolute duty, as to which no discretion lies, to eliminate from such list all acreage other than that which is actually in production.

Subsection A of A.R.S. § 3–409 provides:

"A. In the event the commissioner finds in favor of the petition presented pursuant to § 3–408, he shall direct the supervisor of inspection to prepare a list of *producers* of the commodity in the zone. The supervisor shall within twenty days prepare the list, which shall show the names and addresses of the producers and the producing factors belonging to or controlled by each. He shall deliver the list to the commissioner and shall post a copy thereof in his office for inspection by interested parties. The commissioner may require lists of producers within the proposed proration zone from distributors or handlers of the commodity for which a proration program is proposed, and from such other sources as he deems advisable. *He may correct the supervisor's list after comparison."* (Emphasis supplied.)

Paragraph 10 of A.R.S. § 3–401 defines producer as:

"10. 'Producer' means a person engaged in the business of growing or producing commercially any product for commercial use to the extent of at least one *producing factor."* (Emphasis supplied.)

Paragraph 11 of A.R.S. § 3–401 defines producing factor as:

"11. 'Producing factor' means the unit of one acre in *commercial production * * *."* (Emphasis supplied.)

Paragraph 13 of A.R.S. § 3–401 defines production as:

"13. 'Production' means that portion of the *total crop* of a commodity

of a producer which qualifies for marketing and sale * * *." (Emphasis supplied.)

From the language of the statute quoted above, it seems to us that the legislature intended to and did define "producers" as used in A.R.S. § 3–409 to include only those owning or controlling acreage that is of sufficient maturity to be then producing a crop which qualifies for sale in the market. If the legislature did define the term, then no discretion is left in the Commissioner as to interpretation. Defendants argue that the last sentence of Subsection A of A.R.S. § 3–409, states: "He *may* correct the supervisor's list after comparison." (Emphasis supplied.) and therefore correction of the list is discretionary with the Commissioner. Starting with the proposition that the legislature did define "producers" as used in Subsection A of A.R.S. § 3–409, to include only acreage of sufficient maturity to be then producing a crop qualifying for sale in the market, as we have already decided earlier in this opinion, it is inconceivable that the Commissioner has any discretion not to correct the list when it includes persons other than "producers". In the case of Brooke v. Moore, 60 Ariz. 551, 554, 142 P.2d 211, 212, this court quoted with approval the following rule:

" 'It is a general principle of statutory construction that, when the word "may" is used in conferring power upon any officer, court, or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative, * * *' "

This rule is applicable to the instant case.

It is our view that the law has been defined, and the Commissioner in the performance of a ministerial duty under the law must remove all persons who are not producers and who do not own or control producing factors. Therefore mandamus is properly invoked. In borderline cases the Commissioner may use his discretion as to whether or not a person is a producer under the test laid down but that is not for us to decide now. It is enough to say that it is the Commissioner's duty to remove those persons from the list who are clearly not producers. A.R.S. § 3–422 has no application to the case at hand. This is not a review of the finding of the Commissioner but is an independent action instituted by plaintiffs seeking a declaratory judgment interpreting certain portions of A.R.S. Chapter 3, Article 1, setting up an agricultural prorating marketing program a part of which is hereinabove specifically set out.

There is no merit to defendants' assignment of error that the definition in the summary judgment order renders the Agricultural Prorate Act unconstitutional,

in violation of Article 2, Section 4, and Article 4 of the Constitution of the State of Arizona, A.R.S. and Article 1, Section 1 thereof, and the 5th and 14th amendment to the Constitution of the United States of America. The definition of "commercial production" and "the unit of one acre in commercial production" as contained in the summary judgment order are not so vague that men of common intelligence must guess as to its meaning and differ as to its application. Dennis v. Jordan, 71 Ariz. 430, 442, 229 P.2d 692, 700, quotes with approval from Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 2 A.2d 53, 56, the following:

> "'* * * legislation dealing with social and economic problems cannot be expected, and is not constitutionally required, to be of mathematical exactitude. There are bound to be twilight zones furnishing support to critics who cavil at the want of scientific precision in the law. * *'"

Article 4 of the Constitution of the State of Arizona and Article 1, Section 1 of the Federal Constitution, cited by appellants, are wholly irrelevant to any issue in this case.

Defendants' last assignment of error deals with the constitutionality of the ten per cent method for initiating a prorate marketing program. This method is provided for by A.R.S. § 3-407 to A.R.S. § 3-411 inclusive. They contend that no standard is set forth relative to the ten per cent method to guide the Commissioner in determining who, in various legal situations, may ballot under the ten per cent method provided for in A.R.S. § 3-410, and therefore the ten per cent method is unconstitutional.

■ Throughout this appeal defendants have sought to benefit under the particular provision of the Agricultural Prorate Act which they now claim is in part unconstitutional. Defendants sought to be classified as producers and remain on the Commissioner's list of producers prepared pursuant to a petition under the ten per cent method. This court said in the case of Haggard v. Industrial Commission, 71 Ariz. 91, 100, 223 P.2d 915, 921, that

> "It is the general rule, well established in Arizona, that a litigant may not claim affirmative relief under an act of the legislature and at the same time contend a relative portion of the act under which the relief is claimed is unconstitutional. * * *"

We believe that defendants have placed themselves in this very position and should not be allowed to raise the issue. However, under the definition of producer as set forth in this opinion, it is our view that the Commissioner is in a position to adequately determine who are or are not legal voters in the balloting as provided

for by A.R.S. § 3–410. Further discussion on this point is unnecessary.

The summary judgment order of the trial court is affirmed.

STRUCKMEYER, UDALL, JOHNSON and BERNSTEIN, JJ., concur.