HURWITZ, Justice,
dissenting.
¶ 32 The majority holds that this ease is controlled by the “bright-line” rule of Cov-ington v. Basich Bros. Construction Co., 72 Ariz. 280, 285, 233 P.2d 837, 840 (1951), that “a contract with a public agency is not binding on the public agency until a formal contract is executed.” See supra ¶ 13. I agree with the majority that this case is not factually distinguishable from Covington. See supra ¶¶ 14-15. I also agree that Covington has not been overruled sub silentio by our decisions embracing the principles of § 27 of the Restatement (Second) of Contracts. See supra ¶¶ 16-18.
¶33 I part company with the majority, however, on whether the Arizona School District Procurement Code (“the Code”), Arizona Administrative Code (“A.A.C.”) R7-2-1001 to -1195, displaces the Covington common-law rule. I would hold that under the Code a contract is formed when a school district awards a contract, not at subsequent formal execution of the contract. I therefore respectfully dissent.
I.
¶34 Arizona Revised Statutes (“A.R.S.”) § 15-213(A)(1) (Supp.2004) requires the State Board of Education to promulgate procurement rules “consistent with the procurement practices prescribed in” the state procurement code, A.R.S. §§ 41-2501 to -2673. The State Board adopted the Code pursuant to that statutory directive, and the Code therefore has the force of law. See Taylor v. McSwain, 54 Ariz. 295, 311, 95 P.2d 415, 422 (1939) (“It is the general rule that ... regulations adopted by any commission, under the authority of a statute, have the same force and effect, so far as their scope is concerned, as law----”). As the majority notes, see supra ¶21, the Code expressly states that the common law of contracts “supplement^” its provisions. A.A.C. R7-2-1002(D). But this is only if the common law is not “displaced by the particular provi *425 sions” of the Code. Id. The issue in this case is whether the Code has displaced the Covington common-law rule either expressly or by necessary implication. See Pleak v. Entrada Prop. Owners’ Ass’n, 207 Ariz. 418, 422 ¶ 12, 87 P.3d 831, 835 (2004) (“[I]f the common law is to be changed or abrogated by statute, the legislature must do so expressly or by necessary implication.”).
II.
¶ 35 The Code sets forth a detailed procedure for the solicitation and award of construction contracts. The starting point is an invitation for bids (“IFB”). A.A.C. R7-2-1024. The IFB must include, among other things, all “contract terms and conditions.” AA.C. R7-2-1024(B)(l)(g). Any amendments by a district to the IFB’s proposed contractual terms must occur “within a reasonable time before bid opening.” A.A.C. R7-2-1026(C). Thus, bidders know in advance all terms of the contract other than price; nothing is left to negotiation at the time of award.
¶36 The issuance of an IFB, however, does not automatically compel the district to complete the solicitation and enter into a contract with the low bidder. Rather, “[e]ach solicitation ... shall state that the solicitation may be canceled or bids or proposals rejected if it is advantageous to the school district.” A.A.C. R7-2-1072. The district can cancel the IFB at any time before the receipt of bids if it deems such action “advantageous.” A.A.C. R7-2-1073. After receipt of bids the district may still cancel the solicitation if “advantageous,” but only “before award.” AA.C. R7-2-1074.
¶ 37 The Code also allows the district to reject specific bids without canceling the solicitation if the bidder is determined to be “nonresponsible” or the bid is “nonrespon-sive.” A.AC. R7-2-1075(A), (B). But once again, the Code requires that any such action be taken before an award is made. See A.A.C. R7-2-1076(A) (“The school district shall make a determination that a bidder or offeror is responsible before awarding a contract to that bidder or offeror.”).
¶38 The majority recognizes that these Code provisions can be read as limiting a school district’s ability to cancel a pending solicitation, but declines to interpret the regulations “strictly” because “nothing in the Code expressly prohibits a public entity from withdrawing a bid after acceptance of the bid but before award of a contract.” See supra ¶ 22.[5] But this approach fails to address the real question posed by this case — whether a district may unilaterally cancel the solicitation after award.[6] There is no dispute in this case that the construction contract was awarded to Ry-Tan. At its March 25, 1999 meeting, the School District Governing Board voted to “Cancel [the] Award,” thus clearly acknowledging that an award was made. A similar acknowledgment appears in the District’s supplemental brief, which states that the District “cancel[led] the award to Ry-Tan”. The District also conceded at oral argument that an award was cancelled.
¶ 39 The Code expressly provides that the IFB can only be cancelled for the advantage of the district “before award.” A.A.C. R7-2-1074 (emphasis added). Today’s holding effectively amends this rule to provide the district the right to withdraw the solicitation at any time before “execution” of the contract.[7] Had the framers of the Code desired such a result, they surely could have said so more directly.
¶ 40 The majority’s ultimate holding — that a district is free until the execution of a formal contract document unilaterally to decide, for any reason or for no reason at all, that it will not go forward with the eon- *426 tract — also cannot be squared with several other “particular provisions” of the Code. For example, the Covington rule is inconsistent with A.A.C. R7-2-1131(A), which provides that “the contract shall be awarded to the lowest responsible and responsive bidder.” (Emphasis added.) Under the majority’s view, the low bidder is not awarded a “contract,” but merely a possible opportunity to enter into a contract, an opportunity revocable at the whim of the district.
¶ 41 The Covington rule is also inconsistent with A.A.C. R7-2-1112(B). That regulation provides that a district may refuse to go forward after award if a “contractor” fails to deliver the required performance bond or payment bond. The Code provides no other scenario under which a district can revoke an award. The natural implication is that no other permissible reason exists. More significantly, because the Code defines a “contractor” as “any person who has a contract with a school district,” A.A.C. R7-2-1001(16), the reference in R7-2-1112(B) to a “contractor” necessarily assumes that the successful bidder has a contractual relationship with the school district before delivering the performance and payment bonds. Because this delivery is to occur “at the time the contract is executed,” A.A.C. R7-2-1112(B), the rule thus plainly contemplates that the contract is formed before formal contract execution.
¶ 42 Ironically, the majority relies on A.A.C. R7-2-1112(B) in support of its conclusion that the Code leaves the Covington rule undisturbed. See supra ¶¶ 24-26. But the majority fails to address the significance of the word “contractor” in that Code provision. The majority’s reading of R7-2-1112(B) is flawed in another respect. The majority reads the language in subsection B, referring to rejection of a “bid” for failure to deliver performance and payment bonds, as suggesting that no contract is formed until execution.[8] But such a reading leads to an anomalous result. Under this interpretation of the Code, even if the contractor delivers the required bonds, the district is nonetheless free to decide, for whatever reason, not to exeeute the contract. The award thus would create only unilateral obligations: under R7-2-1112(B), the contractor would be required to deliver the bonds and thereafter to sign the formal contract at the risk of losing its bid security, but the district would have no obligation to accept the tendered bonds or enter the contract.
¶43 A more sensible reading of R7-2-1112(B) is that delivery of the performance and payment bonds and execution of the contract are not prerequisites to contract formation, but rather are conditions precedent to the district’s duty to perform its obligations under the contract that was formed at award. See Restatement (Second) of Contracts § 224 (1981) (“A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.”); id., introductory note to ch. 9, topic 5 (“Conditions and Similar Events” (§§ 224-30)) (“An obligor may ... make an event a condition of his duty in order to induce the obligee to cause the event to occur.”).
¶44 This interpretation of the Code does not, as the majority suggests, render the requirement of bid security superfluous. See supra ¶ 24. The performance and payment bonds are security for the contractor’s eventual performance of the contract and payment of subcontractors. The bid security has a different purpose: it serves as a liquidated penalty for any failure on the part of the successful bidder to deliver the performance and payment bonds, and may be forfeited if the contractor fails to do so.
¶ 45 In short, in my view, the proper reading of the Code is that the district requests offers to enter into a contract by issuance of the IFB. At the time of award, the district accepts the offer of the bidder to enter into the advertised contract at the price specified in the bid. The award is thus the point at which both sides — the bidder and the district — have a meeting of the minds. The district has at that point made the determina *427 tion that it was not in its best interests to cancel the solicitation and that the bidder is a responsible entity which is willing to enter the contract at the lowest price. The district may take its time before award to carefully consider whether it is in its best interests to cancel the solicitation and may carefully review the qualifications of the low bidder, but once an award is made a contract is formed.
III.
¶ 46 The District cancelled the solicitation here because Ry-Tan, after the award but before formal execution of the contract, prematurely delivered equipment to the site and began work. But, as I have noted above, the District’s unilateral ability to cancel the solicitation ended at the time of the award. A.A.C. R7-2-1074. Nor could the district have found Ry-Tan a “nonresponsible” bidder at that point, because the Code expressly requires a determination of responsibility before award. A.A.C. R7-2-1076(A).
¶ 47 What the District is really claiming in this case is that Ry-Tan, having been awarded a contract, breached that contract by commencing work prematurely. However, that argument has already been rejected by the jury, which concluded that Ry-Tan did not commit a material breach of the contract. This finding was upheld on appeal. Ry-Tan Constr., Inc. v. Washington Elementary Sch. Dist., 208 Ariz. 379, 396-401 ¶¶ 65-72, 93 P.3d 1095, 1112-17 (App.2004). The District did not seek our review of that issue and thus cannot now claim that Ry-Tan breached the contract.
IV.
¶48 For the reasons above, I would hold that a contract was formed when the District awarded the contract to Ry-Tan and that the District breached that contract when it refused to accept the performance and payment bonds, execute the formal contract document, and accept Ry-Tan’s contractual performance. Because the majority concludes otherwise, I respectfully dissent.

. The majority thus seems to assume that "acceptance” occurs before "award.” The former term, however, is not used in the Code, and the majority does not define it.

. It is common ground that the Code expressly allows a district to cancel a solicitation before award. See supra ¶ 36.

. The majority also incorrectly suggests that Ry-Tan has argued that a contract was “executed” at the time of award. See supra V 26. But Ry-Tan’s argument is not that the contract was executed. Rather, Ry-Tan argues that there was an "award,” that the "award” formed the contract, and that formal "execution” was not necessary for contract formation.

. The reference in R7-2-1112(A) to "execution of the contract” provides no support to the notion that a contract is not formed at award. As the majority notes in discussing § 27 of the Restatement (Second) of Contracts, our decisions have long recognized that contract formation can occur before formal execution. See supra ¶¶ 17-18.