**HEIDTMAN et, Plaintiffs-Appellants-Appellees, v. SHAKER HEIGHTS (City) et, Defendants-Appellees-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23068. Decided May 12, 1954.

Smoot & Riemer, Cleveland, for plaintiff appellants-appellees.

Ralph W. Jones, Shaker Heights, for defendants appellees-appellants.

John W. King, Columbus, for Amicus Curiae (Association of Ohio Fire Fighters).

## OPINION

By KOVACHY, J:

This cause is before us on questions of law on appeal by plaintiffs appellants-appellees, and a cross-appeal by defendants appellees-appellants, from a judgment rendered by the Court of Common Pleas of Cuyahoga

County in a declaratory judgment action in which the court was asked to determine:

"Whether an initiative petition seeking enactment of an ordinance to establish the three-platoon system in the Fire Department and filed in accordance with the general laws of Ohio and the Charter Provisions of the Defendant, City of Shaker Heights, properly may be rejected as defective by the officials and council of the Defendant City on the ground that circulation of the initiative petition and parts thereof by members of its Fire Department constitutes political activity in violation of §486-23 GC (§143.41 R. C.).

The plaintiffs appellants-appellees are:

Alvin E. Heidtman, Frank J. Schieferstein, and John J. Rafter, and Shaker Heights Fire Fighters Association, Local No. 516, International Association of Fire Fighters A. F. L.

The defendants appellees-appellants are:

City of Shaker Heights, a municipal corporation, John W. Barkley, Mayor of the City of Shaker Heights, Robert D. Templeman. Wilson G. Stapleton, John H. Lansdale, Jr., R. Scott Mueller. Joseph R. Fawcett, Robert B. Dennison; and Wm. R. Van Aken, Councilmen of the City of Shaker Heights; Ralph W. Jones, Director of Law of Shaker Heights; Thos. E. Cook, Director of Finance of Shaker Heights, Ohio.

The Agreed Statement of Facts read:

(1) Plaintiffs, Heidtman, Schieferstein and Rafter are employees of the City of Shaker Heights, Ohio, employed in the classified service of said city as firemen in its Fire Department and constituted a committee of petitioners who, as residents, registered voters and taxpayers of the City of Shaker Heights caused to be circulated an initiative petition seeking enactment by ordinance of the three-platoon system for firemen. Shaker Heights Fire Fighters Association Local No. 516, International Association of Fire Fighters, American Federation of Labor is an unincorporated association with which the individual plaintiffs are affiliated as members.

(2) The defendant, City of Shaker Heights, is a municipal corporation and the individual defendants are the councilmen and officers of the City of Shaker Heights.

(3) The Charter of the City of Shaker Heights contains the following provisions respecting initiative:

### ARTICLE III.

Section 1. Initiative. The electors of the City shall have power to propose any ordinance or resolution, except an ordinance for the appropriation of money or an ordinance making a tax levy, and to adopt or reject the same at the polls, such power being known as the initiative. An initiated ordinance or resolution may be submitted to the Council by petition signed by at least five (5%) percent of the registered electors of the City. When so submitted, the Council shall forthwith determine the sufficiency of the petition and if found sufficient, shall at once have the proposed ordinance or resolution read and referred to an appropriate committee which may be a committee of the whole. Provision shall be made for public hearings on the proposed ordinance or resolution not later than thirty days after the date on which such ordinance or resolution was submitted to the Council.

The Council shall within forty days after such ordinance or resolution is submitted, take final action thereon, either enacting or rejecting the

proposed ordinance or resolution. If the Council fails or refuses to pass such proposed ordinance or resolution or passes it in some form different from that set forth in the petition thereof, the committee of the petitioners may require that it be submitted to a vote of the electors either in its original form or in the amended form, by filing with the Council an additional petition signed by at least two percent (2%) of the registered electors of the City, and if said additional petition is signed by at least five percent (5%) of such registered electors, the date of the election may be fixed therein, not less than 60 days from the time of filing such additional petition. Such additional petition shall be filed within 10 days after the final action on such ordinance or resolution by the Council. The Council shall thereupon provide for submitting such ordinance or resolution to the vote of the electors at the date so fixed, or at the next general election occurring more than 60 days from the filing of such additional petition, if no date be so fixed therein.
* * * *

Section 3. Petitions. An initiative or referendum petition may be circulated in separate parts; but each part shall contain a full and correct copy of the title and text of the proposed or referred ordinance or resolution, and the separate parts shall be bound together and presented as one instrument. Each signer shall be a registered elector of this City, and shall sign his name in ink or indelible pencil, and shall place on the petition his name, his place of residence by street and number, and the date of signing the petition. The form of affidavit provided for nominating petitions by general law, and the other requirements of general law regulating nominating, initiative and referendum petitions shall apply in the case of initiative and referendum in this City.

(4). Plaintiffs, Heidtman, Schieferstein and Rafter, constituting the committee of petitioners did, on January 17, 1953, file with Thomas E. Cook, Director of the Finance Department, and the City Auditor of said City of Shaker Heights, a duly verified copy of the title and text of a proposed ordinance, a true copy of which was attached to the original petition on file in this cause, and thereafter an initiative petition was distributed and circulated as parts thereof by firemen, members of the plaintiff Association, all employees in the classified service of the Fire Department of the City of Shaker Heights, Ohio.

(5) On January 26, 1953, plaintiffs Heidtman, Schieferstein and Rafter, constituting the committee of petitioners, filed with Thomas E. Cook, an initiative petition in 50 parts, in accordance with the provisions of Article III, Sections 1 and 3 of the aforesaid Charter of the City of Shaker Heights, each part containing a full and correct copy of the title and text of the proposed ordinance. A true copy of the initiative petition as circulated was attached to the original petition on file in this cause.

(6) Plaintiffs, Heidtman, Schieferstein and Rafter on Jan. 29, 1953, filed with Thomas E. Cook, in accordance with the provisions of §4227-9 GC (§731.35 R. C.) their sworn statement as circulators.

(7) The Board of Elections of Cuyahoga County, State of Ohio, having had referred to it by defendants, the initiative petition to determine the sufficiency of the signatures thereon, reported thereafter to the defendants that the petitions contained 2132 signatures which could be certified as being genuine signatures of registered electors of the City of Shaker

Heights. As of February 2, 1953, there were 19,107 registered electors in the City of Shaker Heights, and 2132 valid signatures fulfilled the requirements respecting the number of valid signatures, in accordance with Art. III, Sec. I of the Charter of the City of Shaker Heights.

(8) On February 2, 1953, at a meeting of the Council of the City of Shaker Heights, it was reported that, although there were sufficient valid signatures under the provisions of the Charter, the ordinance was not properly proposed by the circulators thereof, for the reason that the separate part petitions were submitted by members of the Fire Department of the City of Shaker Heights and that in doing so the circulators of the petition had violated §486-23 GC (§143.41 R. C.) which reads in part as follows:

"* * * nor shall any officer or employee in the classified service of the state, the several counties, cities and city school districts thereof, be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions."

and that in circulating the part petitions, members of the plaintiff Association, including the individual plaintiffs, had engaged in politics and that petitions having been circulated in violation of law, it was recommended by Ralph W. Jones, the Director of Law, that the Council of the City of Shaker Heights had neither the duty nor the right to proceed further with the petition and the City Council of Shaker Heights by an affirmative majority vote rejected the petition.

The judgment of the Court, as appears in the journal entry was as follows:

(1) That an actual controversey does exist between plaintiffs, Heidtman, Schieferstein and Rafter and the defendants, and the court has jurisdiction for the purpose of rendering a declaratory judgment as between them and the defendants.

(2) That no actual controversey exists between the plaintiff Association and the defendants, and the court lacks jurisdiction for the purpose of rendering a declaratory judgment as between it and the defendants, and that the plaintiff Association is dismissed as a party plaintiff in this cause;

(3) That the action and conduct of the plaintiffs, Heidtman, Schieferstein and Rafter, and 54 other firemen, all members of the Fire Department in the classified civil service of the defendant, City of Shaker Heights, in preparing, circulating and filing an initiative petition to secure enactment of an ordinance to establish the three-platoon system in its fire department and filed in accordance with the general laws of the State of Ohio and the charter provision of the defendant, City of Shaker Heights, constituted a taking part in politics in violation in civil service law; particularly §143.41 R. C. (§486-23 GC); and

(4) That neither the initiative petition nor the proposed ordinance were rendered illegal or void by the action and conduct of the plaintiffs, Heidtman, Schieferstein and Rafter, and other members of the fire department in the classified civil service of the City of Shaker Heights and the defendants could not refuse to 'recognize the validity of the initiative petitions and therefore improperly failed to process and continue proceedings on the petitions in violation of the Charter provisions of the defendant, City of Shaker Heights.

In their first Assignment of Error, plaintiffs appellants-appellees say:

"The preparation, circulation and filing of an initiative petition, by employees in the classified cervice of the City of Shaker Heights, in the Fire Department, does not constitute that kind of activity prohibited by the Civil Service Laws of the State of Ohio, and it was therefore error on the part of the trial court to hold that such conduct and activity was a violation of Civil Service Law."

Sec. 486-23 GC (§143.41 R. C.) reads thus:

### Political Activity Prohibited

"No officer or employee in the classified service of the state, the several counties, cities and city school districts thereof, shall directly or indirectly, orally or by letter, solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription, or contribution for any political party or for any candidate for public office, nor shall any person solicit directly or indirectly, orally or by letter, or be in any manner concerned in soliciting any such assessment, contribution, or payment from any officer or employee in the classified service of the state and the several counties, cities or city school districts thereof; nor shall any officer or employee in the classified service of the state, the several counties, cities and city school districts thereof, be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions."

The part of the statute vital to our consideration in this case is "* * * nor shall any officer or employee in the classified service take part in politics * * *" for the reason that the trial judge found that the conduct of the individual plaintiffs in preparing, circulating and filing an initiative petition constituted a taking part in politics in violation of §486-23 GC (§143.41 R. C.) and thereby concluded that the word "politics" as used therein connotated political activity of a general and broad nature.

Plaintiffs urge that the word **"politics"** as used in this Section of the General Code has a limited and restrained meaning and refers to politics of a partisan nature usually indulged in by political parties in the nomination and election of candidates for public office. They say that the fundamental purpose for establishing Civil Service in government was to create a system by which appointments to public service were to be based on fitness and merit rather than on consideration of one's political activity in behalf of candidates and that consequentlly the object was to eliminate the evils of the so-called "spoils system" in which appointment to or removal from public service was determined by the consideration of whether the person concerned was a protagonist for the victorious or the defeated party.

Defendants contend for a broader interpretation of the word "politics" and draw to our attention a definition this Court promulgated in the case of **Green v. Cleveland, 33 Abs 72 at page 76:**

"It is the conclusion of the majority of the court that any election in which the voters are asked to pass judgment on candidates for office, or on issues, is political in its purpose and result. * * * * * ."

They say the unlawful aspect of the conduct of the individual plaintiffs was that it was political in nature and that this court's definition of the word "political" in the **Green** case, supra, is inescapably fatal to plaintiffs' theory and contention.

The trial court determined the conduct of the individual plaintiffs to be in violation of the Civil Service law on the authority of the Green case.

We may find differences between the facts of the Green case and the case here under consideration. The Green case had to do with the interpretation of a section of a Charter of the City of Cleveland that had been adopted by vote of the people to regulate the conduct of persons in the service of the City, both classified and unclassified, in political matters and was comprehensive in scope. Its principal object was to control the political activities of the city employees in conformance with local concepts and local conditions then and there existing. For instance, the Charter provided for the election of officials on a non-partisan ballot and the Charter did not recognize party organizations whatever. In the case here before us, we are concerned with a penal statute, having state-wide application, enacted by the General Assembly to prohibit the political activities of officers and employees in the classified service of the State, the several counties, cities and city school districts thereof, in certain specified respects. Being a penal statute, it must be strictly construed. 37 O. Jur., 744, Sec. 420. Moreover the decision in the Green case turned upon the meaning of the expression, "a political campaign," as related to the conduct of city employees in the classified service immediately preceding an election. Here, we are concerned with the meaning of the expression, "take part in politics" as regards the conduct of employees in the classified service in preparing, circulating and filing an initiative petition with respect to their own conditions of employment, with no election designated or in immediate prospect. Obviously, the Green case is not analogous to this case, and an analysis of the statute involved becomes necessary for a proper disposal of the questions involved.

The Supreme Court of Ohio stated in the 4th paragraph of the syllabus of **Cochrel v. Robinson, 113 Oh St 526,** that:

"In the construction of a statute, the primary duty of the court is to give effect to the intention of the legislature enacting it. Such intention is to be sought in the language employed and the apparent purpose to be subserved, and such a construction adopted which permits the statute and its various parts to be construed as a whole and give effect to the paramount object to be attained."

What was the paramount object of the legislature in enacting this statute? Prior to Civil Service, the "spoils system" of politics predominated in administrations of the state, cities, counties and city school districts. The political party victorious at the polls saw to it that only a person politically active in its behalf during the campaign be appointed to office. Fitness and competence was of secondary importance and lacking more often than not in the individual named under that system. Under Civil Service, however, a person is appointed to office on the basis of merit and fitness after competitive examination. So, it seems to us, the legislature in §486-23 GC (143.41 R. C.) prohibited political activity on the part of a person in the classified service, to make him independent of any political party control for appointment to and continuance in office and to enable him to pursue his duties unaffected by such party's fortune in the political arena. The efficiency and discipline of the public service was thereby greatly enhanced and the tenure in office of the public servant stabilized and protected.

Sec. 486-23 GC (143.41 R. C.) prohibits a person in the classified service (1) from being in any way involved in seeking assessments, subscriptions or contributions for a **political party or candidate;** (also no person is allowed to seek the same from anyone in the classified service.)

(2) (a) From being an officer in any **political organization** (b) From taking part in **politics**, other than to vote * * and to express * * * one's political opinions.

The word **political** is used three times in the body of the statute and once in its heading. The word **politics** is used but once. The first time the word **political** is used, it is joined with the word **party**. The ordinary and usual meaning of a **political party** is well known. It is an organization seeking or exercising power in the government or public affairs of a state, municipality or the like. (See the New Century Dictionary). The word **political**, in this connection, is clearly used in its narrow sense, meaning partisan politics. The second time the word **political** is combined with the word **organization**. A **political organization** in its usual and ordinary sense means one connected with and serving the purposes of a political party, yet it may be one to further a political cause not partisan in nature, such as a charter amendment, bond issue, special tax levy, etc. Which did the legislature intend here? In the first provision of the statute, a person in the classified service is prohibited from soliciting or receiving assessments, subscriptions or contributions on behalf of a **political party** or a **candidate for a public office.** Since **political party** and **candidate for office** are the only categories mentioned, the legislature patently intended to restrict such political activity to partisan politics alone. Consequently a person in the classified service is free to obtain funds for political organizations non-partisan in nature and not be in violation of this statute.

Now, if a person in the classified service may engage in the solicitation and receiving of funds for political organizations serving nonpartisan political causes, it would be highly inconsistent for the legislature to say to the same person that he cannot serve as an officer of such political organization. It seems to us, therefore, that the legislature, in prohibiting a person in the classified service from acting as an officer in any **political organization**, used the word **political** in its narrow sense and intended that it have a limited and restrained meaning in the expression, **political organization.** In this sense it connotes a body serving partisan politics.

Inasmuch as the word **political** in the mentioned instances has a narrow and restrained, rather than a broad and general sense, the legislature manifestly intended that the word **politics** have a similar connotation Black on Interpretation of Law (2nd Ed.) says at page 196:

"It is a familiar rule of statutory construction that general terms or provisions in a statute may be restrained and limited by specific terms or provisions with which they are associated."

Chief Justice Bartley of the Supreme Court of Ohio in **Teaff v. Hewitt, 1 Oh St 511** at page 544, stated that:

"A statute must be construed in reference to the subject matter of it, and its real object and true intent."

and in **Rhodes v. Weldy. 46 Oh St 234**, parag. two of the syllabus the Supreme Court stated as follows:

"Where the same word or phrase is used more than once in the same act in relation to the same subject-matter, and looking to the same general purpose. if in one connection its meaning is clear and in another it is otherwise doubtful or obscure. it is in the latter case to receive the same construction as in the former, unless there is something in the connection in which it is employed, plainly calling for a different construction."

Moreover, if the legislature intended the expression "take part in politics" to have the all-inclusive and comprehensive meaning claimed by the defendants, there would be no purpose in including the particular provisions of the statute preceding it. In fact they would amount to mere surplusage.

Officers and employees in the classified service have families and are homeowners, taxpayers and civic-minded citizens of the community in which they live. They have the same interests in its welfare, and are just as public-spirited in contributing their efforts toward its development and growth as the citizens otherwise occupied. The legislature could have no purpose in curtailing the normal participation in community affairs of public servants beyond what was necessary to promote the efficiency, integrity and discipline of the public service.

The majority of this court therefore holds that the preparation, circulation and filing of an initiative petition by the individual plaintiffs in this case was not in violation of §486-23 GC (143.41 R. C.) and that the judgment of the Common Pleas Court with respect thereto should be and is reversed.

Plaintiffs in their second Assignment of Error say:

"The plaintiff Association is a necessary and proper party plaintiff together with the individual plaintiffs because all have a common interest in the subject of the action and when declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration. Hence it was error for the trial court to dismiss the plaintiff association as a party because of its common interest which was affected by the declaration of the court."

We believe the action of the trial court in this regard was not erroneous. The action in this case was brought by the individual plaintiffs "on behalf of themselves and others who are so numerous that it is impractical to bring them all before the court." Clearly a class suit including all persons directly involved in the preparation, circulation and filing of the initiative petition The trial court found no actual controversy between the plaintiff Association and the defendants. It is plain there was none.

Defendants-appellees-appellants say in their cross appeal that the trial court erred in holding that the initiative petition and the proposed ordinance were not rendered void by the activities of the individual plaintiffs and that it erred in failing to hold that the Shaker Heights Council's determination of the insufficiency of the petition was conclusive of the matter

In view of our holding that the preparation, circulation and filing of the petition by the individual plaintiffs herein was not in violation of State Law, the trial court's judgment that neither the initiative petition nor the proposed ordinance were illegal or void must be and is affirmed. The question as to the conclusiveness of the action of the Shaker Heights Council in respect thereto requires further consideration on our part.

Defendants point out in their brief that "the Shaker Heights Charter provides that upon the filing of the preliminary petition looking toward the adoption of an initiative ordinance. 'the council shall forthwith determine the sufficiency of the petition' (Art. III. Sec. 1) and that it is stated in the petition and has never been controverted that the petition in the present instance was presented to the Council on January 26. 1953. was then referred to the Director of Law and the Clerk of Council 'to determine its suffi-

ciency," that these officers reported to Council at a Special Meeting held on February 2, 1953 that the Director of Law reported the petition to be insufficient, giving his reasons and that the Council, upon the Law Director's recommendation, rejected the petition and in so doing, the Council discharged a duty which was committed to it by the Charter of the City."

The law with respect to a legal body determining the sufficiency of a petition was laid down by the Supreme Court of Ohio in the case of **State, Ex Rel. Gongwer, v. Graves, 90 Oh St 311, 107 N. E. 1018** syllabus 3:

"The secretary of state, when acting as state supervisor of elections, has the authority to hear and determine the sufficiency and validity of all petitions filed with him under the provisions of **Section 1c of Article II of the Constitution** of this state, and his decision thereon is final, unless such decision has been fraudulently or corruptly made or procured, or unless he has been guilty of an abuse of discretion."

Under the facts of this case, there cannot be nor as a matter of fact are there any claims of fraud or corruption on the part of the Council of the City of Shaker Heights in its vote to reject the petition. The initiative petition was filed in fifty parts with the City Auditor as required by §4227-8 GC (731.34 R. C.). Each part contained a full and correct copy of the title and text of the proposed ordinance as required by Article III, Section 1 and 3 of the Charter of the City of Shaker Heights. Plaintiffs Heidtman, Schieferstein and Rafter filed their sworn statement as Circulators in accordance with the provisions of §4227-9 GC (731.35 R. C.). The Board of Elections of Cuyahoga County reported sufficient genuine signatures of registered electors of the City of Shaker Heights to comply with the requirements of its Charter.

It, therefore, appears that the individual plaintiffs had complied with all applicable provisions of the Charter of the City of Shaker Heights and the Laws of the State of Ohio. Under such circumstances the Council of the City of Shaker Heights had the clear duty to declare this petition sufficient and at once have the proposed ordinance read and referred to an applicable committee which may be a committee of the whole as provided for in Art. 3 Section 1 of the Charter.

We consequently hold that the judgment of the Common Pleas Court that "the defendants could not refuse to recognize the validity of the initiative petition and, therefore, improperly failed to process and continue proceedings on the petition in violation of the Charter provisions of the defendant City of Shaker Heights" was not in error and should be and herewith is affirmed. To hold the petition insufficient under these circumstances would amount to an abuse of discretion.

Judgment reversed in part and affirmed in part as indicated in this opinion. Exceptions. O. S. J.

HURD, PJ, concurs.
SKEEL, J, dissents.

242

## DISSENTING OPINION

No. 23068. Decided May 12, 1954

### OPINION

By SKEEL, J.

I dissent for the reason that the prohibition against civil service personnel engaging in politics under the provisions of §143.41 R. C., was violated by the plaintiffs in circulating initiative petitions among the electors of the City of Shaker Heights and seeking to induce such electors to sign the same, and for that reason the City Council did not abuse its discretion in holding that the petitions were not sufficient under the provisions of the Charter of the City of Shaker Heights.