I.L. OLIVER, a member of Local 176, International Association of Firefighters for and on behalf of the members of said Association, Appellee,

v.

CITY OF TULSA, Oklahoma, a municipal corporation, Appellant,

and

Tulsa Fire Chiefs Association, an unincorporated association, Appellant, Intervenor.

No. 53992.

Supreme Court of Oklahoma.

Oct. 12, 1982.

Rehearings Denied Dec. 13, 1982.

608

Waldo F. Bales, City Atty. by Neal E. McNeill, Asst. City Atty., Tulsa, for appellant, City of Tulsa, Oklahoma.

Chapel, Wilkinson, Riggs, Abney, Keefer & Henson by Charles S. Chapel, Dianne L. Smith, Tulsa, for appellee.

LAVENDER, Justice:

The City of Tulsa (City) is a municipal corporation and a city of the first class under the laws of Oklahoma, operating under a charter approved by the Governor of

the State of Oklahoma on the 5th day of January, 1909.

Local 176, International Association of Firefighters (Union) is the exclusive bargaining agent for the "Firefighters" in the City of Tulsa, and I.L. Oliver (Oliver) is a member of that union and appears for and on behalf of the members thereof as well as for himself personally.

Tulsa Fire Chiefs Association (Chiefs Association) is an unincorporated association composed of employees of the City fire department of the rank of District Chief and higher.

Oliver filed suit against City for a declaratory judgment on the issues hereinafter discussed.

Do the provisions of Article XVIII of the Charter of the City of Tulsa, being a charter amendment proposed by initiative petition and approved at a municipal election and by the Governor of Oklahoma, which amendment prescribes longevity pay for firemen, take precedence over the Firefighters' and Policemen's Arbitration Law, supra, so that longevity pay or allowances are not negotiable as between the City and the Union?

City contends that the trial court erred in its holding that municipal employee longevity pay is a matter of statewide concern and therefore the terms of the Oklahoma Policemen's and Firemen's Arbitration Law superseded the provisions of Article XVIII of the City's charter.

■ We have held that a city charter which is adopted and approved in accordance with the Constitution and which is not inconsistent therewith becomes the organic law of the city and supercedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters.[1] As we said in *U.S. Elevator, supra,* "Under this rule, the conflict between the

supremacy of the state law and the exercise of municipal power under its charter is resolved by determining 'whether such law pertains to general matters of the state and its government or pertains to municipal affairs.' *Lackey v. State,* 29 Okl. 255, 116 P. 913 (1911)."

■ We find that the longevity pay of Tulsa firemen is a matter of purely local concern. However, the rights afforded by the Firefighters' and Policemen's Arbitration Law, supra, including the right of "collective bargaining" as therein set forth and defined are matters of statewide concern.[2] But the rights therein afforded do not pertain to longevity pay, but only to the privilege of the firemen of speaking through a collective voice to authorized representatives of the City.[3] There is, therefore, no conflict between the charter provision and the statute.

Did the codification of the Oklahoma Municipal Code (11 O.S.Supp.1977, § 1–101 et seq.) which became effective on July 1, 1978, and which specifically repealed 11 O.S. 1971, § 548.1 et seq. render the Union's action for declaratory judgment construing the 1971 Act moot and thereby eliminate any justiciable controversy?

It will be observed that the Oklahoma Municipal Code, supra, re-enacts in substantial form 11 O.S.1971, § 548.1 et seq., as amended by 11 O.S.Supp.1972, § 548.3 et seq. (see 11 O.S.Supp.1977, § 51–101 et seq.).

■ When a revised and consolidated act re-enacts in the same or substantially the same terms the provisions of the act or acts so revised and consolidated, the revision and consolidation shall be taken to be a continuation of the former act or acts, although the former act or acts may be expressly repealed by the revised and consolidated act; and all rights and liabilities under the for-

---

1. *City of Ponca City v. Edwards,* Okl., 460 P.2d 418 (1969); *U.S. Elevator Corp. v. City of Tulsa,* Okl., 610 P.2d 791 (1980).

2. *Midwest City v. Cravens,* Okl., 532 P.2d 829.

3. *Midwest City v. Cravens, id.*

mer act or acts are preserved and may be enforced.[4]

We therefore hold that the Oklahoma Municipal Code, supra, although it purported to repeal the statutes sought to be construed, re-enacted in substantial form the statutes purportedly repealed, and did not disrupt the continuity of the statutory law or interrupt its force and effect.

Does the Firefighters' and Policemen's Arbitration Law (11 O.S.1971, §§ 548.3, 548.4) and as amended by the Firefighters' and Policemen's Arbitration Law (11 O.S. Supp.1972, §§ 548.3, 548.4) define and determine the make-up of a collective bargaining unit so that whether municipal firemen of the rank of District Chief or higher are included in the bargaining unit is not a matter of negotiation between the City and the duly constituted bargaining agent for the "firefighters"?

The pertinent provisions of the Firefighters' and Policemen's Arbitration Law of 1971, supra, and the contrasting amendment thereof in 1972 are as follows:

*1971 Act:*

"SECTION 3. Definitions

"As used in this act, unless a context requires a different interpretation:

"1. 'Firefighters ...' shall mean the permanent paid members of any fire department ... in any city, town or municipality within the State of Oklahoma but shall not include supervisory personnel who have the authority to employ or discharge employees and the ... Chief of the Fire Department and an administrative assistant. The administrative assistant shall be that person so designated by ... the Chief of the Fire Department.

\* \* \* \* \* \*

"4. 'Bargaining agent' shall mean any lawful association, fraternal organization, labor organization, federation or council having as one of its purposes the improvement of wages, hours and other conditions of employment among employees of municipal fire ... departments.

"SECTION 5. Bargaining agent— Recognition

"The bargaining agent selected by a majority of the firefighters ... in any city, town or municipality shall be recognized by the corporate authorities as the sole and exclusive bargaining agent for all firefighters ... employed in the city, town or municipality, unless and until recognition of such bargaining agent is withdrawn by a vote of a majority of the firefighters ... in said city, town or municipality.

"SECTION 6. Meet and confer— Agreements

"It shall be the obligation of the city, town or municipality, acting through its corporate authorities, to meet at reasonable times and confer in good faith with the representatives of the firefighters ... within ten (10) days after receipt of written notice from said bargaining agent requesting a meeting for collective bargaining purposes. The obligation shall include the duty to cause any collective bargaining agreement resulting from negotiations to be reduced to a written agreement, the term of which shall not exceed one (1) year; \* \* \*.

"SECTION 7. Arbitration

"In the event that the bargaining agent and the corporate authorities are unable, within thirty (30) days from and including the date of the first meeting, to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration, upon request of either party."

*1972 Act:*

"548.3 Definitions

"As used in this Act, unless a context requires a different interpretation:

"1. 'Firefighters ...' shall mean the permanent paid members of any fire department ... in any city, town or municipality within the State of Oklahoma but shall not include the ... chief of the fire

---

4. 73 Am Jur 2d, Statutes, § 410; 77 A.L.R.2d 336, 347, § 5; *Hunter v. State*, Okl.Cr., 375 P.2d 357 (1962); 82 C.J.S., Statutes, Sec. 295.

department and an administrative assistant. The administrative assistant shall be that person so designated by the ... chief of the fire department.

\*　　\*　　\*　　\*　　\*　　\*

"6. 'Bargaining agent' shall mean any lawful association, fraternal organization, labor organization, federation or council having as one of its purposes the improvement of wages, hours and other conditions of employment among employees of fire ... departments.

\*　　\*　　\*　　\*　　\*　　\*

"548.4 Collective bargaining rights— Supervisory and professional municipal employees—Petition—Hearing—Elections

"A. Firefighters, ... in any city, town or municipality shall have the separate right to bargain collectively with their city, town or municipality and to be represented by a bargaining agent in such collective bargaining with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment.

"B. Supervisory and professional municipal employees may form, join and participate in the activities of employee organizations, provided such organizations do not include nonsupervisory employees. The corporate authority shall not extend formal recognition to a supervisory or professional organization for the purpose of meeting and conferring with respect to grievances and conditions of employment, but may consult or otherwise communicate with such an organization on appropriate matters. The corporate authority shall determine whether an individual is to be considered a supervisory, professional or confidential municipal employee for meet and confer purposes, subject to appeal to the Board.

\*　　\*　　\*　　\*　　\*　　\*

"E. In order to assure to firefighters ... of any city, town or municipality the fullest freedom in exercising the rights guaranteed by this act, the Board shall decide in each case before it in which the issue is raised the unit appropriate for the purposes of collective bargaining, and shall consider such factors as community of interest, wages, hours and other working conditions of the employees involved, the history of collective bargaining, and the desires of the employees."

■ From the plain meaning of the statutes in question, "firefighters" under the act of 1971 are all paid members of the city fire department, save and except supervisory personnel who have authority to employ or discharge employees, the Chief of the Fire Department and his administrative assistant.

The 1972 amendment includes supervisory personnel within the statutory definition of "firefighters."

■ Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs, except where a contrary intention plainly appears.[5]

■ As the Oklahoma Court of Criminal Appeals appropriately said in *Minnix v. State:*[6] "[I]t is within the province of the legislative body to define words appearing in legislative acts, and where an act passed by the legislature embodies a definition, it is binding on the courts. *Traxler v. State,* 96 Okl.Cr. 231, 251 P.2d 815. And as stated in 50 Am.Jur., Statutes, § 262: 'Indeed, a statutory definition supersedes the commonly accepted, dictionary, or judicial definition. Where a statute contains its own definition of a term used therein, the term may not be given the meaning in which it is employed in another statute, although the two may be in pari materia.' "[7]

"Firefighters," as defined in the Act, have the right of "collective bargaining," as also defined in the Act, and to be represented by a "bargaining agent," as defined in the Act.

**5.** *Stone v. Hodges,* Okl., 435 P.2d 165 (1967).

**6.** Okl.Cr., 282 P.2d 772 (1955).

**7.** In accord, see 73 Am Jur 2d Statutes, §§ 224, 225.

The bargaining agent is elected by the vote of a majority of the firefighters, and having been selected, becomes the exclusive bargaining agent for the firefighters.

The 1971 Act defined "firefighters" as excluding supervisory personnel who have authority to employ or discharge employees, and also exclusive of the Fire Chief and his assistant. The 1972 amendment included supervisory personnel who have authority to employ and discharge employees.

Thus, in the case at bar, the Union became the bargaining agent for all permanent, paid employees of the City fire department except for the Fire Chief, his assistant, and fire department supervisory personnel until the effective date of the 1972 amendment, at which time the Union became the bargaining agent for all the permanent, paid employees of the City fire department except for the Fire Chief and his assistant.

Yet, § 548.4 B of the 1972 amendment purportedly permits "supervisory and professional municipal employees" to participate in or join employee organizations *provided* the organization's membership does not include nonsupervisory employees. A literal interpretation of this section results in an unreconcileable conflict. Thus, the Union is made the bargaining agent for the "firefighters" which include fire department employees of the rank of District Chief or higher (except the Fire Chief and his assistant), but § 548.4 B of the 1972 amendment forbids such employees' belonging to "firefighters" because its composition includes nonsupervisory employees.

In *Taylor v. Langley,*[8] we held that where the literal meaning of a statute would result in great inconvenience or lead to absurd consequences which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which will promote the ends of justice and avoid the absurdity. In *Talley v. Har-*

*ris,*[9] we held that a construction of a statute which would lead to an absurdity should be avoided if it can be done without doing violence to the evident intent of the Legislature as expressed in the statute. And in *AMF Tubescope Company v. Hatchel*[10] we held that when two acts, or parts of acts, are susceptible of construction which will give effect to both without doing violence to either, this construction should be adopted in preference to one which leads to a conclusion that there is a conflict. Upon applying these principles to the case before us, we can only conclude that § 548.8 B was intended to apply to "municipal employees" as defined in § 548.3 as distinguished from "firefighters" as therein defined, and since that portion of the Act which relates to all municipal employees as distinguished from Firefighters and Policemen is violative of the Oklahoma Constitution, art. 5, § 57 and inoperative.[11]

We therefore hold that the Firefighters' and Policemen's Arbitration Law defines and determines the make-up of a collective bargaining unit and is not a proper subject for negotiation between the City and the bargaining agent for the "firefighters."

Do the provisions of Initiative Petition VI, being Article XVIII to the Charter of the City of Tulsa and which became effective on May 8, 1962, establish both the maximum and the minimum longevity pay allowance for firemen of the City of Tulsa until changed by further amendment to the city charter?

The charter amendment in question defines regularly employed policemen and firemen as Public Safety Officers of the City of Tulsa, then provides:

"Section 3. Each Public Safety Officer who has completed three years of service as such Public Safety Officer employee of the City of Tulsa shall receive $7.50 per month as a longevity pay allowance to commence the first day of the

---

**8.** 188 Okl. 646, 112 P.2d 411 (1941).

**9.** 199 Okl. 47, 49, 182 P.2d 765 (1947).

**10.** Okl., 547 P.2d 374 (1976).

**11.** *Midwest City v. Cravens, supra.*

month following the month in which such third anniversary of employment occurs; and in like manner thereafter an additional $2.50 per month for each successive year of regular employment as Public Safety Officer until such Public Safety Officer shall have completed twenty years of service, and shall not be increased thereafter but shall remain the same until his service as a Public Safety Officer is terminated."

It is argued by the City that because of the wording in Article XVIII, Section 3 ". . . and shall not be increased thereafter but shall remain the same until his service as a Public Safety Officer is terminated," the longevity pay provided for in the charter became fixed and not subject to change up or down. We disagree. The limitation expressed by the quoted portion of the charter amendment refers to recipients of longevity who have completed twenty (20) or more years of service. It provides that whatever longevity pay such an employee is receiving shall not be increased by adding thereto additional monies based on his or her employment beyond twenty years.

As we have heretofore observed, the matter of longevity pay for city firemen is a matter of local, not state-wide, concern. Therefore, in the absence of a conflict with the Constitution, the Charter Amendment establishes and fixes the longevity pay allowance for the city policemen. Whether a longevity pay increase over and above that fixed by the Charter Amendment is a proper subject for negotiation under the Firefighters' and Policemen's Arbitration Law rests upon whether the language of the charter amendment fixes both the minimum and the maximum longevity pay, or whether it fixes only the minimum longevity pay.

We subscribe to the holding in the case of *McFadden v. Jordan*,[12] wherein the court held: "The right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest

tenable measure of spirit as well as letter. . . . All doubt as to the construction of pertinent provisions is to be resolved in favor of the initiative and such legislation is to be given the same liberal construction as that afforded election statutes generally. However, the interpretation adopted must be reasonable and it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained."[13]

Here the avowed purpose and objective of the initiative petition as set forth therein was to provide continuity of service, to induce Public Safety Officers to remain in the city's employ, to improve departmental efficiency, and to recognize the hazardous nature, the special training, and the peculiar working conditions of such employment. While it is reasonable to assume that establishing a program of minimum longevity pay allowance for firemen might well be a legislative act in furtherance of the proclaimed objectives, it would be wholly unrealistic and unreasonable to assume that freezing the established longevity pay at the May 8, 1962, level until changed by charter amendment would be productive of the amendment's stated objectives. We therefore hold that the charter amendment fixed and established a minimum longevity pay for Tulsa firemen, but left open for future negotiation between the firemen and the city a longevity pay greater than that set forth in the charter amendment.

This action was originally brought by and in the name of Local No. 176 International Association of Firefighters, an unincorporated association. In a motion to substitute I.L. Oliver, a member of the association, for and on behalf of the members of the association as plaintiff, it is alleged that Oliver is a member in good standing and that "said association has over 500 members and it is impracticable to bring them all before the Court." It is further alleged: "That all members of the association have a common interest in the issues raised by the pleadings of this case and were they all before the

12. 32 Cal.2d 330, 196 P.2d 787, cert. denied, 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1080.

13. In accord, see *Yenter v. Baker*, 126 Colo. 232, 248 P.2d 311 (1952).

Court, they would be entitled to bring the action in their individual names." By order of the trial court, I.L. Oliver was substituted for the association as the plaintiff in the cause.

City maintains that the proceedings thereby became a class action which is jurisdictionally defective because statutory proceedings relating to class actions were not followed, and that the relief granted in plaintiff's third cause of action is error because it was not brought by the real party in interest. An examination of the pleadings shows that the action was filed under the Oklahoma Declaratory Judgment statutes, 12 O.S.1971, §§ 1651 to 1657. Section 1653 of that act shares the following language in common with the uniform Declaratory Judgments Act: "When a declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." The Oklahoma Court of Appeals has on two occasions construed this language. In *Reed v. City of Bartlesville*,[14] plaintiffs sought relief under the Oklahoma Declaratory Judgment Act to determine the validity of an airport zoning ordinance, the plaintiffs being owners of land within the area zoned. Against the contention that all property owners in the zoned area were required to be joined in the action, the Court of Appeals held (at page 1016): "In spite of the word 'shall' the joinder requirement is not mandatory in the sense that all parties who might be affected by a declaration must be joined *but only those necessarily and directly affected thereby.*" (Emphasis added.) Again, in the case of *Construction Resources Corp. v. Courts, Ltd.*,[15] the Court of Appeals said (at page 338): "While § 1653 says all persons 'shall be' made parties, it provides for the result of a declaration where all interested parties are not joined.

Thus nonjoinder is not an automatic deficiency."

In *Anthony A. Bianco, Inc. v. Hess*[16] the Supreme Court of Arizona had before it an action for declaratory judgment interpreting the Agricultural Prorate Act originally brought by one affected lemon grower. Five other growers intervened to advocate their interpretation of the Act. Against the contention that there were great numbers of lemon growers whose interests would be affected by the declaratory judgment who were not parties in the case, the court said (at page 1043): "We believe that the issue presented in this case can be settled as well by them as if all those similarly situated had intervened. In addition, under the Declaratory Judgments Act (A.R.S. § 12–1841), the interest of those not made parties is not affected and their rights are not prejudiced. Therefore, we hold that those persons or organizations which did not intervene are not necessary parties to this action."

In *Leonard v. Eastern Massachusetts Street R. Co.*,[17] a proceeding was brought for a declaratory judgment regarding a union's right to have certain grievances submitted to arbitration in accordance with a collective bargaining agreement. It was there held that the chairman and financial secretary were appropriate representatives of all members on an unincorporated union to bring action for and on behalf of the association, and further held that where it was obvious why all members of the class had not been joined (they were too numerous), failure to allege that fact in the pleadings was not such a defect as would bar relief.

In a suit brought by members of a city fire department to determine the validity of an initiative petition seeking the enactment of an ordinance establishing a three-platoon system in the fire department, it was contended that the unincorporated union with whom plaintiffs were associated was a nec-

14. Okl.App., 510 P.2d 1013 (1973).

15. Okl.App., 591 P.2d 335 (1979).

16. 86 Ariz. 14, 339 P.2d 1038 (1959).

17. 335 Mass 308, 140 N.E.2d 187.

essary party. The Ohio Court of Appeals in *Heidtman v. City of Shaker Heights* [18] held:

"The action in this case was brought by the individual plaintiffs 'on behalf of themselves and others who are so numerous that it is impractical to bring them all before the court.' Clearly a class suit including all persons directly involved in the preparation, circulation and filing of the initiative petition. The trial court found no actual controversy between the plaintiff Association and the defendants. It is plain there was none." [19]

In the case at bar, there were over 500 members of the association or union. Oliver was a member of the association, a signer of the union contract and an officer of the association. He was represented in the case by the same attorney who represented the association prior to his being substituted for the association as plaintiff, and there was no showing of any controversy between him and any members of the association. Neither did the association object to his being substituted for it as plaintiff. In light of these facts and the foregoing authorities, we hold that under the Oklahoma Declaratory Judgment Act, *supra,* Oliver was a proper party to bring and maintain the action for declaratory relief, and that no other parties than those who were parties to this cause were necessary parties.

An entirely different problem is presented, however, with reference to that portion of the judgment entered by the court below which purported to render individual judgments in favor of Oliver for and on behalf of individual firefighters who were not made parties to the suit. In the third cause of action of the petition, plaintiff below sought to enforce an Arbitration Decision determining that City had violated the collective bargaining agreement as to certain named firefighters. The trial judge found and determined that Union was a proper party to bring such an action and that Oliver, as a representative of the Union, including the individuals involved in the grievance dispute, was entitled to recover a judgment for a sum of money for and on their behalf. 12 O.S.1971, § 221 provides:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract."

Here there was no assignment by the individual firefighters of their personal claims to Union or to Oliver. In the case of *Maryland Casualty Company v. King,* [20] we held:

" '[T]he real party in interest' is the one entitled to the proceeds of a claim and . . . one who has only a nominal, formal or technical interest in the claim is not a necessary party."

Here, the individual firefighters claimants were necessary parties in a proceeding to determine whether they were entitled to personal judgments, and we find nothing in the Declaratory Judgment Act which would authorize Oliver to recover personal judgments for and on their behalf. We therefore hold that the court below was in error in rendering judgments to Oliver for and on behalf of individual firefighters who were not personal parties to the cause.

The cause is hereby remanded for further proceedings in keeping with the holdings herein expressed.

IRWIN, C.J., BARNES, V.C.J., and HODGES, SIMMS, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurs in part and dissents in part.

18. 99 Ohio App. 415, 119 N.E.2d 644 (1954), aff'd on other grounds in 163 Ohio St. 109, 126 N.E.2d 138.

19. Cases of similar import and holding are found in *Northern Pac. Ry. Co. v. Warner,* 77 N.D. 721, 45 N.W.2d 196 (1950) and in *White House Milk Co. v. Thompson,* 275 Wis. 243, 81 N.W.2d 725 (1957).

20. Okl., 381 P.2d 153, 155 (1963).