The STATE, ex rel. CITIZENS FOR A RESPONSIVE GOVERNMENT COMMITTEE, Appellant,

v.

WIDMAN et al., Appellees.

[Cite as *State, ex rel. Citizens for a Responsive Government Commt., v. Widman* (1990), 66 Ohio App.3d 286.]

Court of Appeals of Ohio,
Erie County.

No. E–89–37.

Decided March 2, 1990.

*D. Jeffery Rengel,* for appellant.

*Michael J. Gentile,* for appellees.

---

*Per Curiam.*

This matter is before the court on appeal from a judgment of the Erie County Court of Common Pleas.

Relator-appellant, Citizens for a Responsive Government Committee, filed a complaint in mandamus in the Erie County Court of Common Pleas on July 17, 1989. Appellant requested an order, in mandamus, requiring defendants-appellees, Edward Widman, Sarah White and the Sandusky City Commission ("the commission"), to certify its initiative petition and to place on the next election ballot in the municipality of the city of Sandusky, Ohio, an amendment proposing the following:

"To abandon the commission-manager plan of government as is currently in use in the municipal corporation of the City of Sandusky and adopt a plan known as the Federal Plan, in which elected officers shall be the mayor and members of council, as provided in Sections 705.71 to 705.86, inclusive, of the Revised Code."

Widman is the Treasurer and Auditor of Sandusky; White is the Clerk of the commission; and the commission is the legislative authority of Sandusky.

Appellant's complaint asserted, in relevant part, that appellees had a mandatory duty pursuant to R.C. 731.28 to certify the initiative to the board of elections and that White and Widman "denied" appellant's petition on July 17, 1989.

In an opinion and judgment entry dated August 22, 1989, the trial court held that R.C. 731.28 was inapplicable to the instant case and stated that in seeking a charter amendment, Section 9, Article XVIII of the Ohio Constitution and "Section 83" [*sic,* see Section 82, fn. 1, *infra*] of the Sandusky Charter ("Charter") must be followed. The court denied the complaint in mandamus and appellant timely appealed, assigning one error:

"Whether mandamus will issue to require a city treasurer (auditor-in-fact) or clerk of city commission to certify petitions from nearly 30% of a city's registered voters when said petition is to place the issue of a change in the form of municipal government upon the ballot."

The electorate of Sandusky adopted a charter on July 28, 1914. The Charter sets forth, *inter alia*, the "form of government" for Sandusky. Section 2 provides:

"The form of government provided in this Charter shall be known as the 'commission-manager plan,' and shall consist of a commission of 7 citizens, who shall be elected at large in manner hereinafter provided. The city commission shall constitute the governing body with powers as hereinafter provided to pass ordinances, adopt regulations, appoint a chief administrative officer to be known as the 'city manager,' and exercise all powers hereinafter provided. (Amend. passed by the voters 11–7–78)"

Any change in the form of government, such as that proposed by appellant, would have to be made by amending the charter. The section of the Ohio Constitution which covers amendments to home-rule charters is Section 9, Article XVIII.[1] This section states, in relevant part:

"Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority."

In *State, ex rel. Blackwell, v. Bachrach* (1957), 166 Ohio St. 301, 306, 2 O.O.2d 219, 222, 143 N.E.2d 127, 131, the Supreme Court of Ohio held:

"The very plain wording of Section 9, Article XVIII, places the duty to submit a proposed amendment to the electors upon the council *and the council alone*. It provides further that the submission shall be governed by the requirement of Section 8, Article XVIII that *the council shall provide by ordinance* for the submission to the electors. It is clear that once a petition for a charter amendment containing sufficient valid signatures is filed with the council, the only body or person thereafter charged with any duty of submitting the question to the electors is the city council." (Emphasis *sic*.)

---

1. Section 82 of the charter is essentially identical to Section 9, Article XVIII of the Ohio Constitution. In relevant part, Section 82 states:

    "Amendments to this Charter may be submitted to the electors of the city by a ⅔ vote of the city commission, and, upon petition signed by 10% of the electors of the city setting forth any such proposed amendment, shall be submitted by such city commission."

In other words, under the provisions of Section 9, Article XVIII, a petition proposing a charter amendment must be submitted to the legislative authority, and it is the duty of the legislative authority to determine the validity of the petition. *State, ex rel. Hinchliffe, v. Gibbons* (1927), 116 Ohio St. 390, 156 N.E. 455. See, also, *Flotron v. Barringer* (1916), 94 Ohio St. 185, 187, 113 N.E. 830, 831 (holding that as far as the legislative authority of a city is concerned, the terms "council" and "commission" are identical).

In the case *sub judice*, appellant did not submit the petition to the commission pursuant to the mandate of Section 9, Article XVIII of the Ohio Constitution. Appellant argues that such submission was unnecessary and asserts that the petition contained the number of signatures required for mandatory placement on the ballot. Appellant recognizes that Sandusky is a charter city pursuant to Article XVIII of the Ohio Constitution; however, appellant insists that amendments, particularly those seeking a change in the form of government, are guaranteed placement on the ballot by Section 2, Article I and Section 1f, Article II of the Ohio Constitution and cannot be limited by the language of a municipal charter.

Section 1f, Article II of the Ohio Constitution ensures the right of initiative and referendum as follows:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

■ The Supreme Court of Ohio has held that this constitutional provision is not "self-executing." *State, ex rel. Blackwell, v. Bachrach, supra,* 166 Ohio St. at 305, 2 O.O.2d at 221, 143 N.E.2d at 131. The procedures incident to the exercise of the right to initiative must be set forth by statute. *Id.* In this regard, appellant directs the court's attention to R.C. 731.28, and asserts that in view of the fact that it has complied with this section, appellees should be compelled to place the issue on the ballot. R.C. 731.28 provides:

"Ordinances and other measures providing for the exercise of any powers of government granted by the constitution or delegated to any municipal corporation, by the general assembly, may be proposed by initiative petition. Such initiative petition must contain the signatures of not less than ten per cent of the number of electors who voted for governor at the next preceding general election for the office of governor in the municipal corporation.

"When a petition is filed with the city auditor or village clerk, signed by the required number of electors proposing an ordinance or other measure, such auditor or clerk shall, after ten days, certify the text of the proposed

ordinance or measure to the board of elections. The auditor or clerk shall retain the petition.

"The board shall submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next succeeding general election, occurring subsequent to seventy-five days after the certifying of such initiative petition to the board of elections. No ordinance or other measure proposed by initiative petition and approved by a majority of the electors voting upon the measure in such municipal corporation shall be subject to the veto of the mayor."

Clearly, this section is distinguishable from and in conflict with Section 9, Article XVIII in that R.C. 731.28 does not require that the petition be submitted to the legislative authority for approval.

Recognizing this conflict, the *Blackwell* court stated that the constitutional provisions for amending city charters are found in Section 9, Article XVIII of the Ohio Constitution. *State, ex rel. Blackwell, v. Bachrach, supra,* 166 Ohio St. at 306, 2 O.O.2d at 222, 143 N.E.2d at 131. After a municipality has adopted its own constitution, *i.e.,* a charter, " * * * the state constitution itself expressly and therefore exclusively provides for a change in such municipal constitution or charter, that is by amendment, in [Section 9, Article XVIII] * * *." *Switzer v. State, ex rel. Silvey* (1921), 103 Ohio St. 306, 314–315, 133 N.E. 552, 554. In *State, ex rel. Hinchliffe, v. Gibbons, supra,* the court stated that, under the provisions of Section 9, Article XVIII, a petition proposing an amendment to the charter of a city *must* be submitted to the city's legislative authority, and it is the duty of the legislative authority to determine the validity of the petition. The rejection of a sufficient petition by the legislative authority constitutes an abuse of discretion. *Heidtman v. Shaker Heights* (1954), 99 Ohio App. 415, 70 Ohio Law Abs. 232, 59 O.O. 180, 119 N.E.2d 644, affirmed (1955), 163 Ohio St. 109, 56 O.O. 171, 126 N.E.2d 138. See, also, *State, ex rel. Polcyn, v. Burkhart* (1973), 33 Ohio St.2d 7, 62 O.O.2d 202, 292 N.E.2d 883. The *Blackwell* court also held:

"The provisions of Sections 731.28 and 731.32, Revised Code, relative to the filing of an initiative petition with the city auditor or village clerk and to the certification of the ordinance or measure by such auditor or clerk to the board of elections *do not apply* to an initiative petition to *amend a city charter,* filed pursuant to Section 9, Article XVIII, Constitution of Ohio." (Emphasis added.) *State, ex rel. Blackwell, v. Bachrach, supra,* at paragraph five the syllabus.

Appellant argues that by petitioning for a change in Sandusky's form of government, it was actually seeking to "abolish" the charter rather than "amend" it. Appellant appears to assert that because it was seeking abolish-

ment, it was not required to follow amendment procedures. Appellant's contention cannot be sustained under the facts of this case.

Recognizing that the petition sought a change in the form of government, it nonetheless altered only *one* out of eight-five sections of the charter. The initiative did not suggest changes for any other sections nor were any other sections mentioned in the petition. In *Reutener v. Cleveland* (1923), 107 Ohio St. 117, 141 N.E. 27, the court refused to classify a document as an "entirely new charter" even though the amendment repealed all but two sections of the old charter. Similarly, in the case *sub judice,* we find that appellant sought to *amend* the charter, not to abolish it.

If the circulators of an initiative petition seeking an amendment to a city's charter comply with all applicable provisions of the city's charter and the laws of the state of Ohio, the legislative authority has a clear duty to declare the petition sufficient and immediately have the petition read and referred to the appropriate committee. *Heidtman v. Shaker Heights, supra,* at paragraph five of the syllabus. In the case *sub judice,* appellant did not comply with the charter and/or laws of the state of Ohio. Accordingly, we find that the trial court correctly determined that a writ of mandamus ordering appellees to place the initiative on the ballot could not be issued. For the aforestated reasons, we find appellant's assignment of error not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.

Prior to his death, Judge JOHN J. CONNORS, JR. participated in the decision-making process of this case.